[Civ. No. 5314. Third Appellate District.—January 27, 1936.]

R. A. HAEHLEN et al., Respondents, v. FRANK WILSON et al., Appellants.

Herbert P. Welch for Appellants.

A. K. Wylie for Respondents.

PULLEN, P. J.—This appeal grew out of a dispute over a boundary line fence separating the property of plaintiffs and defendants.

Plaintiffs owned a lot 150 feet square situated in the northeast corner of a block in the city of Alturas. Defendants owned a lot immediately to the south of the lot of plaintiffs, and also owned a strip or corridor seven feet wide and one

hundred and fifty feet long, running north and south and adjoining the lot of plaintiffs on the west.

Both plaintiffs and defendants operated auto camps and had erected cabins on their respective properties, which they rented to the traveling public. Plaintiffs had built a row of six or eight cabins on the westerly side of their lot, about fifteen feet from the boundary between themselves and plaintiffs. Differences arose between these adjoining owners, and defendants erected a close wooden fence about six and one-half feet in height along the easterly boundary of the seven-foot corridor, which line was, as heretofore pointed out, also the westerly boundary of the property of plaintiffs.

Thereupon plaintiffs brought this action to enjoin defendants from maintaining this fence, and after a trial upon the issues thereby presented, the trial court found the fence was constructed for the purpose of harassing and annoying plaintiffs, and created an obstruction to the premises of plaintiffs, and prevented plaintiffs from renting their apartments and cabins lying on the east of said wall; that said fence created an ugly and untidy appearance and constituted a fire hazard; that it cut off the view from the premises of plaintiff and interfered with the comfortable enjoyment of their property, and caused plaintiffs great and irreparable injury in that they were unable to rent their cabins and apartments. The judgment based upon these findings ordered the removal of said obstruction and enjoined defendants "from building or constructing any structure of similar kind which will interfere with or obstruct the said plaintiffs in the enjoyment and comfort of their said property, or from constructing in front of or to the west of plaintiffs' property on said seven-foot strip of land of said defendants, any building or structure of similar nature to said wall that will obstruct or interfere with the plaintiffs in the comfortable enjoyment of their property that will prevent said plaintiffs from conducting and carrying on their said business of leasing their auto cabins to the public generally". From this decree the defendants appealed.

In 1913 the legislature passed an act dealing with spite fences (Stats. 1913, p. 342) which provided that "any fence . . . unnecessarily exceeding ten feet in height, maliciously erected . . . for the purpose of annoying the owner . . . of adjoining property, shall be deemed a private nuisance". Obviously this structure was not a nuisance *per se*. Ad-

mittedly the present action was not brought under the provisions of this act, as the court found that the "wall", as the fence is denominated in the findings, was about six and one-half feet high, "built of posts cemented into the ground four inches by six inches in size and one by twelve-inch boards nailed upon scantlings or timbers attached to said posts".

Respondents apparently rely upon the provisions of section 3479 of the Civil Code, wherein a nuisance is defined as "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . is a nuisance."

Was this six and one-half foot fence built within three inches of the boundary line between plaintiffs and defendants, entirely upon the lands of defendants, injurious to health or indecent or offensive to the senses or an obstruction to the free use of property of plaintiffs so as to interfere with the comfortable enjoyment of life or property? The trial court so found, but an examination of the evidence fails to support such a conclusion.

It appears that defendants purchased the strip in question as a means to carry off the excess water from their property, the general slope of the land being toward the north, this strip being a natural drain or canal.

Prior to erecting any fence along the boundary between plaintiffs and defendants, plaintiffs were in the habit of depositing their garbage cans upon the land of defendants and persons were using the land of defendants as a way or short cut traversing defendants' land to reach their objective, and plaintiffs at one time deposited gravel in the drain of defendants, which interfered with the drainage from the lands of defendants. To prevent these acts defendants first erected a wire fence, but persons from the property of plaintiffs still persisted in crossing the land of defendants, climbing over and through the wire fence. Plaintiffs objected to this wire fence, and defendants then removed the same and erected the one now in dispute. It is claimed that the fence does not serve as a boundary fence as it does not enclose the property of defendants, but there is no requirement that would compel a property owner to enclose the four sides of his land in order to maintain a boundary fence along one side of his property.

■ Plaintiffs also claim the "wall" created an ugly and untidy appearance and by reason of the fact that weeds and brush accumulate against the "wall", it created a fire hazard. In the absence of some legislative action the courts cannot set up esthetic standards to which builders must conform.

"No case has been cited, nor are we aware of any case, which holds that a man may be deprived of his property because his tastes are not those of his neighbors. Esthetic considerations are a matter of luxury and indulgence rather than a necessity, and it is necessity alone which justifies the exercise of police power to take private property without compensation." (*Varney & Green* v. *Williams,* 155 Cal. 318, 320 [100 Pac. 867, 868, 132 Am. St. Rep. 88, 21 L. R. A. (N. S.) 741].)

■ The fire hazard is no greater than would be that of any wooden structure erected upon the property of defendants, and the maintenance of a frame building would give to the owners of adjoining property no right of action, although it might diminish the value of property and increase the rate of insurance. Such consequences are but incidental to ownership of land in proximity to others. (*McCloskey* v. *Kreling,* 76 Cal. 511 [18 Pac. 433].) ■ The doctrine of "ancient lights" does not apply in California, but in any event it could not be held that a fence six and one-half feet in height would violate such a right, even if it were a recognized rule in California.

■ We therefore can find no invasion by defendants of any right of plaintiffs. Defendants may use their land for all lawful purposes to which such lands may be applied providing they exercise ordinary care to prevent unnecessary injury to the adjoining land owner. Surely the erection of a fence six and one-half feet in height to protect their property from trespassers is not an unusual or unlawful act.

Respondents cite *Western Granite & Marble Co.* v. *Knickerbocker,* 130 Cal. 111 [37 Pac. 192], *Ingwersen* v. *Barry,* 118 Cal. 342 [50 Pac. 536], and *Bar Due* v. *Cox,* 47 Cal. App. 713 [190 Pac. 1056], but all deal with the application of special statutes which are not here relevant.

■ We can find no evidence of malice, and it has been held that "the malicious intent must be so predominant as a motive as to give character to the structure, and it must be manifest and positive that the real usefulness of the structure

will be clearly subordinate and incidental." (*Gallagher* v. *Dodge*, 48 Conn. 387 [40 Am. Rep. 182] ; *Rideout* v. *Knox*, 148 Mass. 368 [19 N. E. 390, 12 Am. St. Rep. 560, 2 L. R. A. 81].)

Inasmuch as the judgment should be reversed we need not discuss the form of the decree itself, nor point out that the effect thereof would be to deprive defendants of any use of their property for building purposes.

The judgment is reversed.

Plummer, J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 26, 1936, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1936.