[Civ. No. 26059. Second Dist., Div. Two. Oct. 9, 1962.]

DAVID B. EVERETT, Plaintiff and Appellant, v. CALI-
FORNIA TEACHERS ASSOCIATION, SOUTHERN
SECTION et al., Defendants and Respondents.

Alexander Lloret Mazzia for Plaintiff and Appellant.

Tanner, Odell & Taft, Donald W. Odell, Sackett & Francoeur, Harry Sackett, Johnson & Stanton, Gardiner Johnson and Thomas E. Stanton, Jr., for Defendants and Respondents.

FOX, P. J.—The plaintiff in this action was Acting Superintendent of the Wiseburn School District from July 1959 to May 1960, at which time he became the Assistant Super-

intendent, Curriculum, of the same school district. He held this latter position at the time of the filing of the complaint.

In June 1960, the defendants published a certain report entitled "A Report on a Professional Problem in the Wiseburn Elementary Schools."[1] Plaintiff brought this action for libel against the California Teachers Association, Southern Section, and twelve named individuals. All of the defendants filed a general demurrer which was sustained by the trial court without leave to amend.[2] Plaintiff appeals from the ensuing judgment of dismissal.

"Normally, privilege is an affirmative defense which must be pleaded in the answer [citation]. However, if the complaint discloses existence of a qualified privilege, it must allege malice to state a cause of action (*Locke* v. *Mitchell,* 7 Cal.2d 599, 602 [61 P.2d 922])." (*Morris* v. *National Federation of the Blind,* 192 Cal.App.2d 162, 164-165 [13 Cal.Rptr. 336]; see cases collected in 51 A.L.R.2d 552, 557-559.) The first issue to be decided on this appeal therefore is: Does the complaint disclose the existence of a privilege? The answer to this inquiry is in the affirmative.

The following allegations in the complaint assert facts which show a qualified privilege under Civil Code section 47, subdivision 3:[3] Paragraph II of the complaint names one of the defendants as the "California Teachers Association, Southern Section." Plaintiff alleges in paragraph III that the other defendants "were members of the Commission on Personnel Standards and Ethics of said association and were members of the association; that said defendants were duly appointed by said association and were acting on behalf of the association, and on behalf of themselves in the preparation

[1]No useful purpose would be served in setting out the alleged defamatory statements verbatim. Suffice it to say that they are critical of plaintiff's qualifications for the position of acting superintendent and of the performance of his duties in that position.

[2]The trial court's rationale in sustaining the demurrer is indicated in its minute order wherein it was stated: "From the face of the complaint, the matter is privileged, section 47, subdivision 3, Civil Code, as being a report of a professional nature; no facts of malice are shown and exhibit 'A' prevails over the general allegations; see *Locke* v. *Mitchell,* 7 Cal.2d 599 [61 P.2d 922.]"

[3]Civil Code section 47, subdivision 3, provides: A privileged publication or broadcast is one made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

and publication of a certain report entitled 'A REPORT ON A PROFESSIONAL PROBLEM IN THE WISEBURN ELEMENTARY SCHOOLS; . . .'' And in paragraph IV, it is alleged: ''That plaintiff was at all times hereinafter mentioned and is now an employee of the Wiseburn School District, County of Los Angeles, State of California; that, during the period from July 10, 1959, to May 16, 1960, plaintiff was Acting Superintendent of said district; that plaintiff now is and since May 17, 1960, has been Assistant Superintendent, Curriculum, of said district; that plaintiff is qualified and duly accredited by the State of California to serve in the capacities of Acting Superintendent, Assistant Superintendent, Curriculum, and Curriculum Director.''

 A publication seeking to convey pertinent information to the public in matters of public interest comes within the purview of the privilege in Civil Code section 47, subdivision 3. (*Howard* v. *Southern Cal. etc. Newspapers,* 95 Cal.App.2d 580 [213 P.2d 399].) ''We may take judicial notice of the fact that the overwhelming majority of the citizens of this country are interested in such matters and in questions which affect the education and proper training of our youth.'' (*Harris* v. *Curtis Publishing Co.,* 49 Cal.App.2d 340, 350 [121 P.2d 761].)

In *Heuer* v. *Kee,* 15 Cal.App.2d 710 [59 P.2d 1063], in upholding a similar claim of privilege, the court said (p. 715): ''The conduct of appellant in the discharge of her duties as a teacher was a matter of public concern, and there was sufficient evidence to justify the trial court in concluding that the publication of the matter complained of was, in the instant case, for the public benefit.''

 In addition to the public's interest and concern in these matters, certificated public school employees and their associations have a legitimate interest in investigating and reporting on the conduct of an individual certificated employee.

The report, therefore, *if without malice,* was a privileged communication within the meaning of section 47, subdivision 3, Civil Code. ''In such a case malice becomes the gist of the action and it must exist *as a fact* before the cause of action will lie. . . . Hence, where the complaint discloses a case of qualified privilege, no malice is presumed[4] and in

---

[4]Civil Code section 48 provides that in the case provided for in Civil Code section 47, subdivision 3, ''malice is not inferred from the communication.'' (Footnote ours.)

order to state a cause of action the pleading must contain affirmative allegations of *malice in fact."* (*Locke* v. *Mitchell,* 7 Cal.2d 599, 602 [61 P.2d 922].) (Emphasis added.)

▉▉▉ Plaintiff in the instant case has set forth *no facts* showing that malice existed at the time the communication was published. It is alleged in the complaint that the report contains certain "false, libelous, malicious and defamatory" statements concerning plaintiff and "[t]hat defendants and each of them wickedly and maliciously and with intent and design to injure, disgrace, and defame plaintiff and to bring him into public discredit published said report and statements therein complained of and that said published statements as quoted in paragraphs VI through XVI herein were false, libelous, malicious, defamatory, and unprivileged; that defendants and each of them intervened in Wiseburn School District affairs and intentionally and maliciously defamed plaintiff in an attempt to cause the dismissal of plaintiff from his employment; that because of said wilful and malicious publication, plaintiff is entitled to recover exemplary and punitive damages in the sum of $200,000.00."

▉▉▉ To destroy the privilege plaintiff must allege and prove that defendants entertained toward him a feeling of hatred or ill will " '. . . going beyond that which the occasion apparently justifies . . .' " and " ' " different from that which *prima facie* rendered the communication privileged, and being a motive contrary to good morals." ' " (*DeMott* v. *Amalgamated Meat Cutters,* 157 Cal.App.2d 13, 27 [320 P.2d 50] ; cf. Civil Code, § 48a, subdivision 4(d).)

▉▉▉ The above allegations appear to be nothing more than mere conclusions of the pleader " '*unless the article itself lends support to such a conclusion.*' " (*Locke* v. *Mitchell, supra,* 7 Cal.2d 599, 603; *Taylor* v. *Lewis,* 132 Cal.App. 381, 384 [22 P.2d 569].) (Emphasis ours.)

▉▉▉ The report in the case *sub judice* does not support the conclusion that it was maliciously published. The report shows:

Defendants are the California Teachers Association, Southern Section, an incorporated professional organization of teachers, and the members of the Commission on Personnel Standards and Ethics of that organization.

The commission was requested to make its study and report by the Wiseburn Faculty Association, a chartered chapter of the California Teachers Association, all but one of whose members in 1960 were members of the California Teachers

Association. Prior to requesting the study, the Faculty Association had conducted a survey which showed that 83.5 per cent of the teachers in the district "felt that the teacher morale was unsatisfactory," 74.7 per cent felt that "the general working conditions in the Wiseburn District were unsatis- factory" and 83 per cent "believed that the acting super- intendent [plaintiff] was not doing a satisfactory job."

The cooperation of the plaintiff in the study was sought but the commission was advised by him that "he would not meet for an interview."

Subsequently a letter was mailed to plaintiff stating, *inter alia*: "I would like to assure you that the Commission is doing everything possible to maintain a neutral position on all issues involved in the Wiseburn School District. It is the Commission's sincere hope and objective to gather all infor- mation that will permit the Commission to objectively pin- point the issues, their origin and possible solutions. Any assistance you, as an individual, can give in an interview with the Commission will be greatly appreciated."

Defendants' findings, which contain six of the eleven state- ments alleged to be libelous, merely summarize the evidence presented to the defendants. Since plaintiff was the acting superintendent of the district during the period under study, much of the evidence related to his qualifications and manner of performance of duties. There was other evidence, however, which was critical of the board members, and it cannot be fairly said that plaintiff was singled out for special, vindic- tive treatment. Plaintiff and the board members had the opportunity to present rebuttal or explanatory evidence, but they refused to do so, and such refusal should not bar defend- ants from making a fair report of the evidence they did receive, as a necessary basis for their conclusions and recom- mendations.

Defendants' conclusions and recommendations dealt impar- tially with the board members, plaintiff as the acting super- intendent and the regular superintendent. Like the evidence defendants heard, the conclusions and recommendations were critical of all of these individuals, but all of the criticism dealt with matters which invited public attention and called for public comment and none of it was of the sort which would follow the individuals into their private lives or pry into their domestic concerns. The board members were public officers and the plaintiff was a public employee and a member of the teaching profession, and public policy and the interest

and necessities of society require that they be freely subject to the critical appraisal of a professional commission such as the one defendants constituted.

The statement in *Eva* v. *Smith,* 89 Cal.App. 324, 328-329 [264 P. 803], is here apropos: "Taking the article as a whole, it seems clear to us that it amounts to no more than a criticism of plaintiff's qualifications for office and one which defendant was entitled to make. No malversation on the part of plaintiff is charged. . . . Nor does the article charge that plaintiff was guilty of dishonest conduct with reference to any public contracts. An individual who seeks or accepts public office invites and challenges public criticism so far as it may relate to his fitness and qualifications, and it is a proper subject of comment. . . . The distinction between criticism and defamation is that the former deals only with such things as invite public attention or call for public comment, and does not follow a public man into his private life or pry into his domestic concerns, but only his work. [Citations.] The right of criticism rests upon public policy and those who seek office should not be supersensitive or too thin-skinned concerning criticism of their qualifications [citation]. . . . The purpose of the rule permitting fair and honest criticism is that it promotes the public good and hence is based upon public policy. [Citation.]''

Since the privilege is not shown to be abused on the face of the complaint, it follows that the sustaining of the demurrer was not error. (*Taylor* v. *Lewis, supra,* 132 Cal.App. 381.)

In his brief plaintiff makes no argument on the theory that the court abused its discretion in sustaining the demurrer without leave to amend. Nor does he suggest that he had any additional facts to allege.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.