[Civ. No. 28695.   Second Dist., Div. Four.   Oct. 6, 1966.]

LEO KATCHER et al., Plaintiffs and Appellants, v. HOME SAVINGS AND LOAN ASSOCIATION, Defendant and Respondent.

Jerrold A. Fadem, Gideon Kanner and Lee D. Weisel for Plaintiffs and Appellants.

Crider, Tilson & Ruppé, McKenna & Fitting, Opal Slater, W. F. McKenna and Paul Fitting for Defendant and Respondent.

Roger Arnebergh, City Attorney (Los Angeles), Bourke Jones and Marcus E. Crahan, Jr., Assistant City Attorneys and Jack L. Wells, Deputy City Attorney, as Amici Curiae.

JEFFERSON, J.—This is an appeal from the judgment dismissing plaintiffs' complaint upon the granting of defendant's motion for a summary judgment.

These background facts are undisputed. Plaintiffs are four married couples who own homes situated along Mulholland Drive as it winds along the edge of and near the crest of the Santa Monica Mountains above Laurel Canyon and overlooking the San Fernando Valley. When plaintiffs built or became the owners of these residences they had few neighbors. The San Fernando Valley was then largely undeveloped. The site of plaintiffs' homes commanded a breathtaking, totally unobstructed panoramic view of the valley and its surrounding mountains.

Then defendant, Home Savings and Loan Association, acquired a large parcel of land in Laurel Canyon below plaintiffs. This land extended to and bordered on Mulholland Drive. Defendant sought to subdivide and construct a tract on the part of its land lying on the canyon floor below Mulholland Drive. At this point the paved portion of the road was only 24 feet in width. The remainder of the 100-foot right of way of the City of Los Angeles was unimproved and, in part, consisted of the air space over the steeply sloped ravine which ran down to defendant's property. At some points this ravine extended down from the road as much as 100 feet.

The City of Los Angeles set, as one of the conditions for approval of defendant's tract, that defendant widen the improved portion of Mulholland Drive to the width of the easement right-of-way. This was to be accomplished by using an earth fill as a base for the road. The fill would extend from the floor of the canyon up to the level of the improved portion of Mulholland Drive. Upon learning of the city's requirements, defendant revised its construction plans to include six terraced building lots, each approximately 100 feet in length, to be located on the fill immediately adjacent to the extended

portion of Mulholland Drive. The city issued defendant a grading permit for this purpose and the fill, begun in January 1962, was completed in May 1962. The six lots were subsequently sold by defendant and the construction of homes was begun. The effect of this widening of the plateau along which Mulholland Drive is located, and the construction of homes on the terraced lots created by the fill, was to destroy plaintiffs' panoramic view. Plaintiffs brought this action after the building pads for the six lots had been completed and the fill was in place.

In plaintiffs' amended complaint, filed in February 1963, it is alleged that, when plaintiffs became the owners of their properties along Mulholland Drive, each acquired vested property rights, as provided for in the Comprehensive Zoning Plan of the City of Los Angeles, to the panoramic view, the privacy and naturalness of the setting, and to the "extraordinary light and air"; defendant violated these rights by the construction of its "veritable man made mountain" in violation of the city's Comprehensive Zoning Plan; an injunction should be granted requiring defendant to remove this "mountain".

Plaintiffs further allege that they suffered money damages as the result of defendant's negligence in not conducting its development with regard for the rights of the other homeowners in the area and in accordance with the zoning plan; that as a proximate result of defendant's acts plaintiffs' privacy and panoramic view were destroyed and their free enjoyment of light and air was impaired; also, that plaintiffs suffered physical distress from the "noise bombardment" and the invasion of their nasal passages and lungs by dust and dirt stirred up during the filling process.

Defendant answered denying the material allegations of the complaint and setting up affirmative defenses. On October 23, 1963, defendant filed its notice of motion for summary judgment. Affidavits in support of and in opposition to the motion were filed. The court below heard the motion on November 16, 1963, made its order granting it on January 20, 1964, and the judgment of dismissal from which plaintiffs bring this appeal followed on the same date.

In opposing the motion in the court below, plaintiffs, in their affidavits filed in opposition, did not contend that defendant failed to perform its grading operation in accordance with the plans and specifications filed with the appropriate governmental authority and pursuant to permits issued for

the work shown thereon, but rather, maintained that defendant was operating with permits which were not properly issued and were therefore invalid. Plaintiffs reached this conclusion on the theory that the work proposed to be performed by defendant was not permitted by the applicable provisions of the Los Angeles Municipal Code. The code, it was argued, prohibited the construction of any "structure" in excess of 45 feet in height in an R1 zone such as where plaintiffs' property was located; the earth fill constructed by defendant must be regarded as a "structure" within the meaning of the code; and since defendant's fill admittedly reached depths of 100 feet in some places, it was therefore prohibited in the R1 zone. Plaintiffs further maintained that defendant's acts constituted actionable negligence and that it was guilty of a nuisance.

At the hearing on the motion, in addition to the affidavits and counteraffidavits introduced, the court had before it the pertinent zoning ordinances and codes, the plans and specifications for defendant's tract, and the permits issued defendant.

The trial court, in a memorandum opinion handed down in conjunction with the order granting defendant's motion for summary judgment, concluded that no issue of fact was presented; that the gravamen of plaintiffs' stated causes of action involved the legal interpretation of the applicable municipal code and related questions of law. The court found that defendant's interpretation of the code was correct; that the earth fill was not a "structure" within the meaning of the building code; and that, since the permits issued by the city authorizing the work were not illegal and defendant's acts were in compliance with these permits, plaintiffs had no cause of action in law or equity.

The court disposed of plaintiffs' allegations of negligence by pointing out that no factual showing was made that any alleged act of negligence on defendant's part proximately or legally affected plaintiffs; that insofar as plaintiffs' claim of damages from dust and noise, plaintiffs' affidavits did not allege that they were anything more than the normal result of the lawful construction of a subdivision in the normal and expected manner.

The court found, as a matter of law, that defendant was not guilty of a nuisance since everything defendant did was expressly authorized by permits issued pursuant to validly enacted city ordinances and building codes. Cited, was section 3482 of the Civil Code, which provides that, "Nothing which

is done or maintained under the express authority of a statute can be deemed a nuisance.''

Plaintiffs now contend that the court below erred in granting the summary judgment for defendant, as the facts, plaintiffs argue, showed an unreasonable interference by defendant with the enjoyment of their property; further, that the construction of the earth fill constituted a nuisance not authorized by any statute, or if authorized, the authorization was unconstitutional.

With the permission of this court, the City of Los Angeles has filed an amicus curiae brief in this appeal in which it supports the findings of the trial court that defendant performed its grading as authorized under its permit from the city and that the permit was properly issued.

''The purpose of the summary judgment procedure is to discover, through the media of affidavits, whether the parties possess evidence which demands the analysis of trial. (*Burke* v. *Hibernia Bank,* 186 Cal.App.2d 739, 744 [9 Cal.Rptr. 890] ; *Kramer* v. *Barnes,* 212 Cal.App.2d 440, 445 [27 Cal.Rptr. 895] ; Code Civ. Proc., § 437c.) The object of the proceeding is to discover proof. (2 Witkin, Cal. Procedure, pp. 1711-1715.) The affidavits of the moving party are strictly construed and those of his opponent liberally construed. (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264] ; *Snider* v. *Snider,* 200 Cal.App.2d 741, 748 [19 Cal.Rptr. 709].) A summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact. (*Burke* v. *Hibernia Bank, supra,* pp. 743-744; *Snider* v. *Snider, supra,* p. 748.)'' (*Saporta* v. *Barbagelata,* 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661].)

Upon the application of these rules in the instant case, we are drawn to the conclusion that defendant's affidavits present ample facts which would justify a judgment in its favor, while plaintiffs fail to counter with evidence which raises any factual issue.

It has long been established in this state that a landowner has no easement over adjoining land for light and air in the absence of an express grant or covenant. (*Western Granite & Marble Co.* v. *Knickerbocker,* 103 Cal. 111 [37 P. 192] ; *Kennedy* v. *Burnap,* 120 Cal. 488 [52 P. 843, 40 L.R.A. 476] ; *Clark* v. *Mountain States Life Ins. Co.,* 1 Cal.App.2d 301 [36 P.2d 848] ; *Taliaferro* v. *Salyer,* 162 Cal.App.2d 685 [328 P.2d 799].)

"The English doctrine of ancient lights under which a landowner acquires, by uninterrupted user, an easement over adjoining land for the passage of light and air was early repudiated in this state because it is not adapted to the conditions existing in this country and could not be applied to rapidly growing communities without working mischievous consequences to property owners. The use of light and air from adjoining premises cannot be adverse, since there is no invasion of the adjoining proprietor's rights of which he can complain. Thus, he cannot be presumed to have assented to that use or have parted with a right." (1 Cal.Jur.2d, Adjoining Landowners, § 30, at pp. 758-759.)

■ The trial court correctly determined that all of the acts done by defendant were in accordance with the applicable ordinances of the City of Los Angeles. There is no merit in plaintiffs' contention that the depth of the fill violated the height limit imposed by the city zoning law.

Section 12.21.1 of the Los Angeles Municipal Code, at all times pertinent hereto, effectively provided that no building or structure in the R-1 zones shall exceed 3 stories or 45 feet in height. Section 12.03 defines the height of a building as "the vertical distance between the highest point of the adjacent ground elevation and the ceiling of the top story of the building." "Adjacent Ground Elevation" is then defined in section 12.03 as follows: "The mean elevation of the surface of the ground between a point touching the exterior wall of a building and a point three feet distant from said wall, measured perpendicularly therefrom." This clearly shows that, for purposes of the Comprehensive Zoning Plan, maximum height limitations are to be computed from the level of the lot "as graded," rather than from the original ground level.

■ The trial court correctly concluded that plaintiffs' attempt to state a cause of action on a theory of negligence must also fail. As the court indicated, plaintiffs' affidavits do not state facts which show that defendant was in any way negligent, or if so, that its negligence was the proximate cause of any legally assessable damage to plaintiffs.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied October 21, 1966, and appellants' petition for a hearing by the Supreme Court was denied November 30, 1966.