[Civ. No. 25916. First Dist., Div. Three. Jan. 28, 1970.]

DRUMMOND JOHN McCUNN, Plaintiff and Appellant, v.
CALIFORNIA TEACHERS ASSOCIATION et al.,
Defendants and Respondents.

## COUNSEL

Cowan, Henze, Morken & Stone, Cowan & Henze, Richard D. Sanders and Douglas G. Cowan for Plaintiff and Appellant.

Johnson & Stanton, Gardiner Johnson and Thomas E. Stanton, Jr., for Defendants and Respondents.

## OPINION

**BROWN (H. C.), J.**—This is an appeal from the order granting summary judgment and from the summary judgment entered pursuant thereto in favor of defendants in a libel action.

The appellant is the former superintendent of the Contra Costa Junior College District. He was discharged after members of an investigative panel at the request of the governing board of the district rendered a report concerning his qualifications. Appellant filed this action against the California Teachers Association, California School Boards Association, California Junior College Association, California Association of School Administrators, Harry McPherson, Hilton D. Bell, Karl J. Bengston, Wendell C. Black, Lewis T. Clohan, Robert W. Corlett, John P. McCrackin, James A. Corson, Floyd B. Mansell, Jack Pursell, James M. Williamson, and a number of defendants sued by the fictitious name of Doe. The complaint alleges that the report was a false and malicious publication that not only caused him to lose his job but also damaged him in his professional career.

The trial court in awarding the summary judgment found that the report was conditionally privileged and that appellant's declaration and deposition failed to support the existence of the essential issue of malice. The court further found that the claim that respondents, in rendering the report, were motivated by malice was completely negated by all of the depositions and declarations of respondents and by all the facts and circumstances.

The law pertaining to summary judgment is well settled. In *Stationers Corp. v. Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785], the court stated: "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a

triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts."

It is emphasized at the outset that this appeal does not relate to the truth or falsity of the report so as to constitute a libel under Civil Code section 45. It is also to be noted that appellant does not seek to be returned to his position as superintendent. He merely claims damages for a libelous report. The sole issue is whether the pleadings, depositions, declarations and other exhibits presented in support of, and in opposition to, the motion for summary judgment establish a triable issue as to the existence of malice in the preparation and publication of the panel's report.

The facts: The appellant was the superintendent of the Contra Costa Junior College District for a period of 13 years. Criticism as to his manner of administering his duties and differences between the superintendent and professional staff resulted in investigation of his actions by defendants-respondents, California Teachers Association, et al.

The respondent associations selected a panel of seven members to conduct the investigation and studies, and to report its results. The seven-man panel consisted of two superintendents of other school districts, a representative of the California Teachers Association, a representative of the California Junior College Association, a member of Personnel Standards Commission of the California Teachers Association, a member of the governing board of the California School Boards Association and the director at large of the California School Board Association. Each member of the committee had an extensive record in the field of education and the allied functions of teaching and administration. They were selected as members of the panel by the organizations they represented by reason of their capabilities and interest in public education. None was directly or individually concerned with the problem to be studied.

The panel met on four successive days and interviewed 130 persons who voluntarily appeared and testified. The witnesses consisted of leaders of industry, labor, members of the clergy, teachers, school administrators and public officials.

The panel made its report which was entitled "Findings and Conclusions." We comment on the report, not for the purpose of deciding whether

the panel was correct in its adverse recommendation but because we feel that its contents disclose the objectiveness and fairness of the panel members and because of its obvious implication of lack of malice. The panel found that appellant, as superintendent, was for many years the focal point of the district's problems. The report also stated that he was considered by many of the witnesses as being a gracious host, a person adept in public relations, a good promoter, and a capable business administrator, and that many citizens praised the superintendent for having guided the district during the building program and its period of rapid growth without having to resort to a bonding program, while other witnesses criticized this procedure and the superintendent's financial recommendations as having necessitated several years of college operation in sub-standard and makeshift facilities, some of which are still in use.

The testimony presented to the panel as to his negative qualities vastly outweighed the favorable comments, i.e., it found he was unable to provide the necessary professional leadership, failed in administrative-teacher relations and in educational leadership. Specific examples were cited supporting the panel's findings which caused disharmony and other personality conflicts. The citation of specific areas of inadequacies as superintendent embraced superintendent-teacher relations, superintendent-board relations, superintendent-community relations, superintendent-student relations and intra-faculty relations.

Although appellant was invited to testify, he refused to appear.

The panel's report concluded that appellant should be requested to tender his resignation. The appellant failed to tender his resignation and the district board thereafter terminated his services.

Appellant's declaration states, inter alia, that: (1) the faculty and administration of Diablo College was in a state of agitation, which state coincided with the presence on the campus of respondents Williamson and Mansell, who were employees of the California Teachers Association (CTA), which promoted the agitation; (2) the CTA encouraged people who were critical of appellant to testify at the hearing; (3) in reckless disregard for truth, the panel accepted the unsworn statements of some 130 witnesses without cross-examination; (4) 4,500 copies of the panel's report was an excessive distribution calculated to destroy appellant's professional reputation; (5) a number of respondents had made critical remarks about appellant; (6) the report contains false statements, and (7) the CTA was determined to see that he was dismissed.

The declarations of respondents Robert W. Corlett, Harry McPherson, Lewis T. Clohan and James M. Williamson were presented to show the absence of malice. Corlett stated that he was present as a member of the

panel at all its hearings regarding appellant; that "[he] did not express, and no member of the study panel expressed in his presence or hearing, any ill will, spite or hatred against plaintiff, and neither he, nor any other member of the study panel in his presence did any act evidencing or tending to evidence ill will, spite or hatred against plaintiff."

Harry McPherson (chairman of the 1962 panel investigation) testified in his deposition that prior to the panel hearings he was acquainted with appellant; that he admired him and described appellant as personable and with intellectual capacity; that their relations were cordial. McPherson further testified in his deposition that the testimony presented at the hearing disclosed that some 13 to 18 administrators in the area had resigned because they had been subjected to appellant's ridicule and disrespect.

Mr. McPherson's opinion at the conclusion of the panel hearing was that appellant's "usefulness in that position was gone; . . . that the only thing that could be done to bring harmony in the district, . . . was for the superintendent [appellant] to resign."

Lewis Clohan testified in his deposition that he was a member of the panel; that he had never met Dr. McCunn, the appellant, before the hearings and that a number of the administrators who had resigned testified before the panel that the reason for their resignations was because of complete frustration and inability to get along with Dr. McCunn. On the basis of the testimony offered, it was the opinion of the panel that the superintendent was the focal point of the district's problems.

The deposition of respondent James Williamson disclosed that he believed his relationship with appellant was cordial and, upon being questioned by appellant's attorney, stated he did not bear any malice, hatred or ill will toward appellant; that Dr. McCunn was invited to the panel meetings to testify and to submit the names of persons who would also testify.

The deposition of appellant was also introduced as a part of the record, which indicated that his charge of malice was based on the fact the respondent signed the report and stated: "MR. JOHNSON: Q. What were the facts, Mr. McCunn, upon which you based your charge that Dr. Harry McPherson acted against you with malice? A. His name is on the report. Q. Is that the basis of the charge? A. As of this time. I reserve the right to give additional information at a later date." *The same questions relative to his charge of malice against all the other defendants were answered in the same manner, i.e., "his name is on the report."* Whereupon the questioning of appellant as to malice became more specific: "Q. Well, is it your position then that the basis of the charge of malice against these personal

defendants and the associations as of this hour and this moment is based then upon the fact that their names appear upon the report of 1962? A. Well, the report and other information. Q. When you say 'other information,' what do you mean? A. That I do not recall at this time. . . ."

We agree with the trial court that there is no appreciable evidence supporting the issue of the existence of malice in the report or the procedure used in obtaining information or that information was obtained but "not used," as contended by appellant.

It is conceded that under California law respondents had a conditional privilege to publish the report in question. (See Civ. Code, § 47; *Noonan* v. *Rousselot,* 239 Cal.App.2d 447, 454 [48 Cal.Rptr. 817].)

The panel's report is not the basis for a cause of action unless appellant can demonstrate that respondents made the alleged defamatory statements with "actual malice." (*New York Times Co.* v. *Sullivan,* 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412]; *Everett* v. *California Teachers Assn.,* 208 Cal.App.2d 291 [25 Cal.Rptr. 120].)

The California Civil Code defines "actual malice" as "that state of mind arising from hatred or ill will toward the plaintiff; . . ." (Civ. Code, § 48a subd. (4) par. (d).)

Various definitions have also been announced by the California courts, among them: "[Malice is] a desire or disposition to injure another founded upon spite or ill will. [While the] absence of malice is the absence of enmity." (*Siemon* v. *Finkle,* 190 Cal. 611, 618 [213 P. 954].) "[The privilege] is lost if the publication is motivated by hatred or ill will . . . [citations], or by any cause other than the desire to protect the interest for the protection of which the privilege is given. . . . [It] is lost if [the publisher] has no reasonable grounds for believing his statements to be true." (*Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 797 [197 P.2d 713].) Actual malice or malice in fact, is a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy, or injure another person. (*Davis* v. *Hearst,* 160 Cal. 143, 157 [116 P. 530].) " 'Actual malice, . . . means personal hatred or ill will towards the plaintiff, or wanton disregard of the civil obligations of the defendants toward the plaintiff.' " (*Hearne* v. *De Young,* 132 Cal. 357, 361-362 [64 P. 576].) Malice may also be implied if the defamatory remarks, although honestly believed to be true, are "exaggerated, overdrawn, or colored to the detriment of plaintiff, or are not stated fully and fairly with respect to the plaintiff, . . ." (*Snively* v. *Record Publishing Co.,* 185 Cal. 565, 578 [198 P. 1].)

The United States Supreme Court has defined "actual malice" requisite to an award for damages for defaming a public official as "knowledge that

it [the defamatory statement] was false or with reckless disregard of whether it was false or not." (*New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254, 280 [11 L.Ed.2d 686, 706, 84 S.Ct. 710, 95 A.L.R.2d 1412].)

The trial court stated in its memorandum opinion: "It would seem clear therefore that if plaintiff's action is to survive the motion for summary judgment there must be a triable issue of fact as to: (1) whether the report was published with knowledge that it was false; or (2) whether the report was published with a reckless disregard for whether it was false or not; or (3) whether the defendants, or any of them, in preparing and publishing the report were motivated by actual spite or ill will towards plaintiff and this spite or ill will was the major motive for their actions.

"... . . . . . . . . . . . . . . . . .

"There is no suggestion, in the factual material presented to the court, that the defendants, or any of them, were motivated by actual spite or ill will towards plaintiff. Actually, all indications are to the contrary, including plaintiff's own statements concerning his relationship with various defendants.

"Plaintiff contends that he is entitled to look to the report itself for evidence of malice, citing the Everett case for this proposition. This is a correct statement of the law but it does not assist plaintiff. The report is devoid of evidence of actual malice. There is nothing in the report which would tend to show that it was published with knowledge of any false statements contained therein or with reckless disregard for the truth or falsity of any such statements. Nor is there anything that tends to show actual spite or ill will. If the report is considered by itself, it tends to show a conscientious effort on the part of the panel to conduct a fair inquiry, accumulate as much information as possible, and fairly appraise it.

"... . . . . . . . . . . . . . . . . .

"Plaintiff contends that there was excessive publication and that this, by itself, is evidence of actual malice. There is really little evidence that the publication was excessive. . . . Yet this contention might present a triable issue of fact if excessive publication could constitute proof of actual malice. It is difficult to see how it could do so in this case. Certainly the number of copies printed is no evidence of intentional falsehood or reckless disregard for truth. Nor does it, in the light of all of the other evidentiary material presented in connection with the motion, supply evidence of actual spite or ill will.

"The essential weakness of plaintiff's case is that he treats criticism as evidence of actual malice. There is no question that many persons were critical of plaintiff's performance as superintendent. Some of these con-

ceivably could have felt actual ill will towards plaintiff. But there is not the slightest indication that any of the defendants did. If criticism of, or dissatisfaction with, a public official's performance is itself evidence of actual malice, then the constitutional guarantees laid down by the United States Supreme Court and recognized and followed in *Noonan* would become worthless."

We agree with the opinion of the trial court. The investigation was thorough. Over 100 witnesses were called and examined. Testimony of the excellent qualifications of appellant was contained in the report, together with that which was critical of him. We have reviewed the entire record and fail to find evidence supporting the existence of the issue of malice.

The report states: "The panel made every effort to encourage the superintendent to meet with it. The executive of the California Teachers Association Personnel Standards Commission called him prior to the convening of the panel, inviting him to participate in the study by scheduling an appointment for himself and by suggesting those who he felt would have information that would be helpful to the panel. Though he would not suggest others to be contacted he did schedule a tentative appointment for himself which he later cancelled. . . ."

■ The panel's invitation to appellant to appear and to submit his views is evidence that the panel members desired the investigation to be fairly conducted and negates malice. The failure of appellant to appear is an indication of his disregard for the efforts of those concerned with the solution of an admitted problem in the administration of the school district's affairs.

■ Although the affidavits of the non-moving party (appellant herein) are to be liberally construed in his favor (*Eagle Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264]) "[a] summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact. (*Burke* v. *Hibernia Bank, supra* [186 Cal. App.2d 739] pp. 743-744 [9 Cal.Rptr. 890]; *Snider* v. *Snider, supra* [200 Cal.App.2d 741] p. 748 [19 Cal.Rptr. 709].)" (*Saporta* v. *Barbagelata,* 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661]; in accord, *Katcher* v. *Home Sav. & Loan Assn.,* 245 Cal.App.2d 425, 429 [53 Cal.Rptr. 923].) ■ In other words, it is the duty of the trial judge to review the evidence presented by the counteraffidavits in order to determine whether there is sufficient evidence to present a triable issue, and the mere fact that appellant herein contends that respondents were motivated by ill will is of itself insufficient to deny the summary judgment. (See *Washington Post Co.* v. *Keogh,* 365 F.2d 965 [20 A.L.R.3d 972].)

We have concluded that the investigation report was made by a competent and conscientious panel which was impartially selected and that the record before us does not disclose a triable issue as to malice.

The summary judgment is affirmed. The appeal from the order granting the summary judgment, a non-appealable order, is dismissed.

Draper, P. J., and Caldecott, J., concurred.

A petition for a rehearing was denied February 27, 1970.