[No. A014919. First Dist., Div. Three. Mar. 18, 1987.]

PETER WOLFORD et al., Plaintiffs and Appellants, v.
JEFFREY THOMAS et al., Defendants and Respondents.

348

**COUNSEL**

Lawrence W. Schonbrun for Plaintiffs and Appellants.

Gary J. Near and Near & Kaus for Defendants and Respondents.

## OPINION

MERRILL, J.—Plaintiffs and appellants, Peter and Marguerite Wolford (Wolfords), filed a complaint for abatement of both a public and private nuisance, injunctive and declaratory relief, and damages against defendants and respondents Jeffrey and Evelyn Thomas (Thomases).

In their at-issue memorandum, the Wolfords requested a jury trial. At trial the Thomases made a motion for a court trial, which motion was granted.

During the course of the trial, the Thomases also moved the court to dismiss the Wolfords' cause of action for a public and private nuisance on grounds of res judicata. The Wolfords alleged both a public and private nuisance for the acts of the Thomases in constructing a penthouse addition on their property and in violating the building, housing, planning and zoning codes of the City and County of San Francisco. The trial court declined to dismiss this cause of action but it did rule that the Court of Appeal's decision in *Wolford* v. *Board of Permit Appeals* (Feb. 5, 1980) 1 Civil 40443, 42771 [nonpub. opn.], that building permits were validly issued to the Thomases, was res judicata.

At the conclusion of the presentation of the Wolfords' evidence, the Thomases moved for judgment[1] on all the causes of action which alleged either a public or private easement. The trial court ruled that there was no evidence presented by the Wolfords which would establish an easement and granted the Thomases' motion for judgment on these causes of action. In addition, at the conclusion of the trial, the trial court found that the Wolfords were entitled to no relief on the cause of action alleging a public and private nuisance. Judgment was then entered in favor of the Thomases on all causes of action and the Wolfords appeal.

## I

In 1962, upon the death of Peter Wolford's mother, the Wolfords became the owners of a three-story apartment building at 1037-1039 Broadway on San Francisco's Russian Hill. In 1963, the Wolfords considered moving from their apartment on the second floor to the third floor. They consulted a

---

[1] Code of Civil Procedure section 631.8, at the time of trial, provided in pertinent part: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this code, or may decline to render any judgment until the close of all the evidence."

contractor about changing the configuration of the third-floor apartment in order to maximize the view. By making the living room the bedroom and vice versa, and by enlarging the windows in the new living room, the Wolfords would be able to enjoy an expansive view of the San Francisco skyline, the San Francisco Bay and the East Bay Hills.

Before beginning construction, Peter Wolford approached his neighbor Henrik Bull (Bull) who lived in the adjacent two-story building. Peter Wolford wanted to know whether Bull had any plans to build on his roof. Bull replied that he had no such plans. Thereafter, Peter Wolford asked Bull for "a letter [giving] me his permission to enlarge the living room."

Bull gave Peter Wolford a letter dated August 1, 1963, which reads as follows: "Permission is hereby granted by me for you to enlarge your existing windows overlooking my roof and on our mutual property line; my building being at 1033-1035 Broadway." The letter was notarized. Peter Wolford recorded the letter at the San Francisco County Recorder's office. He testified that he believed that the letter gave him an easement.

The Bulls sold their home to the Thomases in 1974. Soon thereafter, the Thomases applied for and received permits to construct a third-story "penthouse addition" to their two-story building. One retired San Francisco city planner, who was involved with the approval of the permits, testified that the Thomas building, prior to the new construction, occupied 100 percent of the lot, in violation of the planning code. According to this witness, the planning code prohibited the enlargement of such an illegal structure. Another witness, the chief building inspector for San Francisco, testified that the permits were validly issued and that the penthouse addition was a legal structure.

The penthouse addition to the Thomas property significantly diminished the view from the second-floor apartment of the Wolford building. Light and air for that apartment were also restricted by the new construction. In addition, the penthouse partially obstructed the view from the third-floor apartment which had been rented to tenants when the Wolfords moved out of the building in 1966. The privacy of the third-floor tenants was disturbed because the new deck area for the penthouse was adjacent to their bedroom. There was testimony that the Wolford building suffered a $54,000 diminution in fair market value and a $12,612 loss in rental value because of the adjacent structure.

## II

The Wolfords' first contention on appeal is that the trial court committed prejudicial error by granting the Thomases' motion for a court

trial. The Wolfords urge that they were entitled to a jury trial on their complaint for abatement of public and private nuisance, interference with easement and damages. We disagree.

The right to a jury trial is guaranteed by our state Constitution. (Cal. Const., art. I, § 16.) ■ The test as to whether a jury trial is required in particular circumstances depends upon the characterization of the issues as legal or equitable. Legal issues must be determined by a jury, while equitable issues may be determined without a jury. (*Selby Constructors* v. *McCarthy* (1979) 91 Cal.App.3d 517, 524 [154 Cal.Rptr. 164].) "Whether a cause of action is in law or equity is determinable from a consideration of the common law as it existed at the time of its adoption by this state, and 'in the light of such modifications thereof as have taken place under our own system' [citations]; depends in large measure upon the mode of relief to be afforded [citations]; is ascertained from the gist of the action as framed by the pleadings and the facts in the case [citations]; but is not fixed by the prayer or the title. [Citations.]" (*Paularena* v. *Superior Court* (1965) 231 Cal.App.2d 906, 911-912 [42 Cal.Rptr. 366].)

If an action is essentially equitable in nature and the relief sought " 'depends upon the application of equitable doctrines,' " there is no right to a jury trial. (*C & K Engineering Contractors* v. *Amber Steel Co.* (1978) 23 Cal.3d 1, 9 [151 Cal.Rptr. 323, 587 P.2d 1136].)

In *Southern Pac. Transportation Co.* v. *Superior Court* (1976) 58 Cal.App. 3d 433, 437 [129 Cal.Rptr. 912], in deciding that a good faith improver action does not entitle a plaintiff to a jury trial, the Court of Appeal stated: "The fact that damages is one of a full range of possible remedies does not guarantee real parties the right to a jury .... We recognize that where a complaint raises both legal and equitable issues, a jury trial may be obtained upon the issues raised by the legal cause. [Citation.] Here, however, there is no possibility of severing the legal from the equitable." (*Ibid.*)

■ In the instant case, the gist of the Wolfords' complaint was clearly to abate a public and private nuisance and for injunctive and declaratory relief. California courts recognize that a party is not entitled to a jury trial in an action to abate a nuisance. (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 298 [231 P.2d 832]; *People* v. *Frangadakis* (1960) 184 Cal.App.2d 540, 545-546 [7 Cal.Rptr. 776]; *City of Turlock* v. *Bristow* (1930) 103 Cal.App. 750, 756-757 [284 P. 962].) Furthermore, the bulk of the relief sought here, under both the nuisance and easement claims, was equitable. In addition to the prayer for abatement, the Wolfords requested that the Thomases be enjoined from maintaining the penthouse addition and that the City of San Francisco be authorized to demolish it if the Thomases did

not. Also, the Wolfords prayed for a declaration that they possessed an easement for air, light, heat, ventilation and view over the Thomases' roof. The fact that the Wolfords' complaint also sought "damages according to proof" does not convert this essentially equitable action into a legal one. It was infeasible for the court to sever the legal claim from the equitable one here. Moreover, the damage claims were incidental to the equitable claims. If the Wolfords were to prevail and damages were awarded, it would be primarily on a basis of the court fashioning a remedy other than demolishing the penthouse. One of the aspects of an equitable action is the balancing of the interests of the parties. To do equity a trial court must have various options available to it, including that of awarding damages. In sum, the trial court's action of granting the Thomases' motion for court trial was correct. The Wolfords were not entitled to a jury trial on their claims.

### III

The Wolfords also contest the granting of the motion for judgment, pursuant to Code of Civil Procedure section 631.8, in connection with the easement counts. They claim that the trial court erred in ruling that the 1963 letter from Bull did not create an easement. It is asserted that evidence presented at trial established that Bull and Peter Wolford intended to create an easement for view. We find no error in the trial court's grant of the motion for judgment.

Preliminarily we observe that our review of the granting of a motion under Code of Civil Procedure section 631.8 is limited to whether there is substantial evidence to support the decision. (*Don Wilson Builders* v. *City of Torrance* (1981) 126 Cal.App.3d 114, 120 [178 Cal.Rptr. 690].) The court's findings are not reversible if supported by substantial evidence. (*Miller* v. *Dussault* (1972) 26 Cal.App.3d 311, 316 [103 Cal.Rptr. 147].) In the case at bench, no evidence was presented to the trial court which would support a finding of an easement.

"An easement is an *interest in the land of another,* which entitles the owner of the easement to a *limited use or enjoyment* of the other's land." (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 340, p. 2040.) An easement may be affirmative, allowing the doing of acts, or it may be negative, preventing acts from being performed on the property. (*Ibid.*) It may be created by grant, express or implied, or by prescription. (*Guerra* v. *Packard* (1965) 236 Cal.App.2d 272, 285 [46 Cal.Rptr. 25]; *Jones* v. *Harmon* (1959) 175 Cal.App.2d 869, 875 [1 Cal.Rptr. 757].)

Here, the evidence at trial showed that, upon Peter Wolford's request, Bull wrote the Wolfords a letter granting them permission to enlarge

their existing lot line windows. Despite the fact that the letter makes no reference to an easement, Peter Wolford testified that he believed Bull was promising him an easement.[2] To Peter Wolford, the letter meant that his windows "wouldn't be blocked in the future." He relied on this letter as the basis of his easement and had the letter recorded. Bull did not testify at the trial.

We are satisfied that the trial court correctly granted the Thomases' motion for judgment on the easement claim. The letter does not give the Wolfords any right to do any acts on the Bull property nor does it limit any acts that Bull may do on his property. Further, the letter does not subject the Bull property to any service to be performed upon it for the benefit of the Wolfords' property. Clearly, an easement was not established by the evidence in this case.

## IV

The Wolfords also contest the trial court's conclusion that a public nuisance was not created by the Thomases' penthouse addition. Specifically, they challenge the court's determination that there was no showing of the required element of special injury since there was no right for access to light, air and view. The Wolfords also claim that there could not be a res judicata effect concerning the validity of the penthouse permit since that was not specifically litigated in the previous case. Finally, the Wolfords charge that the trial court erred by deciding that the construction of the penthouse did not violate various building and planning code provisions.

In its memorandum and notice of intended decision, the trial court concluded that the Wolfords suffered no special injury which would constitute the basis for an action for a public nuisance since under California law there is no cause of action for interference with access to light, air and view by an otherwise lawful structure. Further, the court stated that the opinion of the Court of Appeal in *Wolford* v. *Board of Permit Appeals, supra,* 1 Civil 40443, 42771 [nonpub. opn.], decided, as a matter of law, several issues pertaining to the claims of public and private nuisance and was thus res judicata as to those issues. The court explained that by this ruling it was referring to the various building permits issued for the penthouse construction. Finally, the court ruled that the third-story penthouse addition was constructed pursuant to valid and lawfully issued permits.

A nuisance is defined by the Civil Code as "[a]nything which is . . . an obstruction to the free use of property, so as to interfere with the comfortable

---

[2] Although there was testimony that the letter had the words "Easement - Henrik Bull to Peter Wolford" on the back of it, no evidence was presented which demonstrated that Bull wrote such words.

enjoyment of life or property . . . ." (Civ. Code, § 3479.) "A public nuisance is one which affects at the same time an entire community or neighborhood . . . although the extent of the annoyance or damage inflicted upon individuals may be unequal." (Civ. Code, § 3480.) "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." (Civ. Code, § 3493; *Buchanan* v. *Los Angeles County Flood Control Dist.* (1976) 56 Cal.App.3d 757, 768 [128 Cal.Rptr. 770].)

*Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116 [99 Cal.Rptr. 350] concerned an action for public nuisance by four individuals against a fiberglass manufacturing plant in the City of Santa Clara. The complaint alleged that the plant was a continuing public nuisance, in that the emissions from it severely polluted the air, injured the health of the citizens of the county and obstructed the public view of the hills surrounding the Santa Clara Valley. Three of the plaintiffs alleged that the maintenance of the alleged nuisance caused their allergies and respiratory disorders to be aggravated. The fourth plaintiff alleged that he had been specially injured by reason of his loss of view.

As to the fourth plaintiff, the *Venuto* court stated that the issue is "whether an interference consisting of an obstruction to view is encompassed within the definition of a nuisance." ■ Although the court was concerned with the interference caused by the emission of smoke and other waste matter, it articulated the rule that a building or structure does not constitute a nuisance merely because it obstructs the passage of light and air to the adjoining property or obstructs the view from the neighboring property, provided such building or structure does not otherwise constitute a nuisance. (*Id.,* at pp. 121, 126-127.)

The court noted that *Venuto* is unlike those cases wherein the production of smoke, dust, or odors was found to "disturb or prevent the comfortable enjoyment of property" and thus, constitute a nuisance even though the activity did not directly damage the land or prevent its use. (*Id.,* at pp. 126-128.) The court stated that the plaintiff, by claiming merely the loss of view, failed to bring himself within the purview of those cases, and relief could not be afforded him. (*Id.,* at pp. 127-128.)

The *Venuto* court explained that California law has rejected the English doctrine of " 'ancient lights' " which afforded a landowner, by virtue of uninterrupted use, an easement over adjoining property for the passage of light and air. (*Id.,* at p. 127.) Such a rule was considered infeasible for young, rapidly growing communities in this country.

The trial court correctly applied these principles in determining that no public nuisance existed under the facts of the case at bench. The Wolfords

proved no special injury to themselves because, pursuant to California authority, they cannot complain of the obstruction of light, air and view from an adjacent structure which is otherwise lawful. Like the plaintiff in *Venuto*, the Wolfords here have not established that the activities of which they complain do any more than interfere with the passage of light and air and obstruct the view.

■ With regard to the question of whether the penthouse was constructed pursuant to valid permits, we must first examine the res judicata effect of the Court of Appeal's decision in *Wolford* v. *The Board of Permit Appeals, supra,* 1 Civil 40443, 42771 [nonpub. opn.]. In that consolidated appeal, wherein Jeffrey Thomas was the real party in interest, the Wolfords appealed two judgments denying their petitions for writs of administrative mandamus. The Wolfords challenged, inter alia, the acts of the board of permit appeals (Board) in issuing the Thomases' two permits for a porch extension, a deck and railing. (*Id.,* at p. 2.) The Court of Appeal held that there was ample substantial evidence to support the Board's grant of Thomases' appeal from the denial of their permit applications. The court found that the Board was correct in issuing permits for the construction of the porch extension, deck and railing. (*Id.,* at pp. 13-17.)

Moreover, the Court of Appeal opinion upheld the Board's action in declining to exercise jurisdiction over the Wolfords' untimely appeal from the previous issuance of a permit for the construction of the penthouse addition. The opinion thoroughly discusses the validity of the process by which the Board refused to hear the Wolfords' appeal and concludes that the penthouse permit is valid. (*Id.,* at pp. 7-13.)

■ The doctrine of res judicata precludes parties or privies from relitigating issues that have been finally determined by a court of competent jurisdiction. Any issue necessarily decided in the first case is conclusively determined as to the parties or their privies if it is involved in subsequent litigation on a different cause of action. (*Levy* v. *Cohen* (1977) 19 Cal.3d 165, 171 [137 Cal.Rptr. 162, 561 P.2d 252].) A prior judgment is binding upon real parties in interest for purposes of res judicata. (*Bank of America* v. *McLaughlin etc. Co.* (1940) 40 Cal.App.2d 620, 629 [105 P.2d 607], cert. den. *sub nom. McLaughlin Land & Livestock Co.* v. *Bank of America National Trust & Savings Assn.* (1941) 313 U.S. 571 [85 L.Ed.2d 1529, 61 S.Ct. 958].) Res judicata applies to judgments on the merits in proceedings in mandamus. (*Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 733 [13 Cal.Rptr. 104, 361 P.2d 712].) Furthermore, the rule of res judicata applies to issues that have been determined by a ruling on jurisdiction. (*Beckstead* v. *International Industries, Inc.* (1982) 127 Cal.App.3d 927, 934 [179 Cal.Rptr. 767].)

■ We must reject the Wolfords' argument that the question of the validity of the penthouse permits was not determined in the prior action. By affirming the Board's action, the Court of Appeal necessarily decided that the validity of the permits were no longer subject to challenge. The trial court correctly determined that the prior decision was res judicata as to the validity of the permits.

V

■ The Wolfords next assert that the trial court erroneously concluded that no legal claim for private nuisance exists because there is no right of access to air, light and view under California law. Relying on inapposite cases, the Wolfords contend that California law does in fact provide for a cause of action for private nuisance for interference with access to air, light and view. We affirm the trial court's conclusion in this regard.

As stated previously, a private nuisance is the unreasonable, unwarrantable or unlawful use by an individual of his own property so as to interfere with the rights of others. (*Hutcherson* v. *Alexander* (1968) 264 Cal.App.2d 126, 130 [70 Cal.Rptr. 366, 38 A.L.R.3d 636].) However, being a landowner, standing alone, does not create a right of access to air, light and view over adjoining property. (*Venuto* v. *Owens-Corning Fiberglas Corp., supra,* 22 Cal.App.3d at pp. 126-127; *Katcher* v. *Home S. & L. Assn.* (1966) 245 Cal.App.2d 425, 429-430 [53 Cal.Rptr. 923]; *Taliaferro* v. *Salyer* (1958) 162 Cal.App.2d 685, 689-690 [328 P.2d 799].)

*Katcher* v. *Home S. & L. Assn., supra,* 245 Cal.App.2d 425 involved a factual scenario analogous to our case. In *Katcher* four homeowners sued the owner and developer of a large parcel of land in the San Fernando Valley. The plaintiffs alleged that their vested property rights in the panoramic view, privacy, and " 'extraordinary light and air' " were violated by the defendant's construction of terraced homes in violation of the zoning plan. (*Id.,* at p. 427.) They sought an injunction and damages for the alleged private nuisance. The Court of Appeal affirmed the trial court's grant of summary judgment, holding that, absent an express grant or covenant, a landowner enjoys no easement for light and air over adjoining land. (*Id.,* at p. 429.) " '. . . The use of light and air from adjoining premises cannot be adverse, since there is no invasion of the adjoining proprietor's rights of which he can complain. . . .' [Citation.]" (*Id.,* at p. 430.) The court also held that the defendant's construction was in compliance with all applicable city ordinances. (*Ibid.*)

We also find the opinion in *Taliaferro* v. *Salyer, supra,* 162 Cal.App.2d 685 elucidating on this issue. In that case, the Court of Appeal held that there

is no cause of action stated by one landowner for an adjoining landowner's construction of a house and fence which interferes with light and air and which exceeds the building code height limitation. The *Taliaferro* court explained that one landowner has no easement over adjoining land for light and air. Therefore, a landowner cannot claim damages when an adjoining landowner "does something strictly on his own property which shuts off the air and light" to the first landowner. (*Id.*, at p. 689.) Further, the court stated that even though local governments, in the exercise of their police power, may validly impose height restrictions for the benefit of the general public, a violation thereof does not necessarily state a cause of action for nuisance. (*Id.*, at p. 691; see also *Biber* v. *O'Brien* (1934) 138 Cal.App. 353, 358-359 [32 P.2d 425].)

Applying the principles set forth in *Venuto, Katcher* and *Taliaferro*, it is plain that the Wolfords did not establish a private nuisance since they could claim no right to light, air, or view over the adjoining property. By the construction of their penthouse, the Thomases did not interfere with any recognized rights possessed by the Wolfords.

The Wolfords rely on *Haehlen* v. *Wilson* (1936) 11 Cal.App.2d 437 [54 P.2d 62] for their argument that California law allows a right of action for the interference with light, air and view, where ordinary care is not exercised to prevent unnecessary injury to adjoining landowners. However, the *Haehlen* opinion does not stand for this proposed interpretation. In *Haehlen,* the Court of Appeal held that there was insufficient evidence to support the trial court's conclusion that a fence constituted a nuisance. (*Id.*, at pp. 440-441.) Finding that plaintiffs rights had not been invaded in any manner, the court stated that "[d]efendants may use their land for all lawful purposes to which such lands may be applied providing they exercise ordinary care to prevent unnecessary injury to the adjoining land owner." (*Id.*, at p. 441.) This case clearly is not helpful to the Wolfords because there was no evidence presented in the instant case that the Thomases used their land for unlawful purposes. Further, the evidence presented at trial did not demonstrate that the Thomases used anything less than ordinary care in the construction of their building.

VI

The Wolfords' last claim of error is that the trial court should have granted them relief for public or private nuisance inasmuch as the facts of this case fall within the purported "malice exception" to the repudiation of the ancient lights doctrine. Their sole authority for this claim is *Griffin* v. *Northridge* (1944) 67 Cal.App.2d 69 [153 P.2d 800], which held that the

intentional and malicious interference with an individual's comfortable enjoyment of his or her home constitutes a private nuisance.

In *Griffin,* shortly after the plaintiffs moved into their home adjacent to the defendants' home, the defendants began a course of maliciously harmful and injurious conduct toward them. A sampling of defendants' conduct includes: moving their garbage can from its usual place to a location almost directly below the Griffins' dining room window; erection of a string of tin can tops on the property line which annoyed the Griffins and disturbed their sleep; deliberate splashing of paint on the walls and windows of the Griffin home; verbal abuse of Mrs. Griffin while she was entertaining guests; and the planting of trees along the property line, which obstructed the Griffins' view, deprived them of light and air, and imperiled the foundation of their house. (*Griffin* v. *Northridge, supra,* 67 Cal.App.2d at pp. 71-72.) The court concluded that the defendants' obstruction of the Griffins' light and view, as well as the other acts, was a deliberate attempt to harass and annoy them. (*Id.,* at pp. 75-76.)

Despite the Wolfords' urgings to the contrary, no evidence was presented at trial which suggests that the Thomases' alterations to their building were done with malice.

The judgment is affirmed.

Scott, Acting P. J., and Barry-Deal, J., concurred.