[No. E005306. Fourth Dist., Div. Two. May 2, 1991.]

J. THORNTON POSEY, as Trustee, etc., Plaintiff and Appellant, v. DAVID K. LEAVITT et al., Defendants and Respondents.

1238

**COUNSEL**

Iwasaki, Thomas & Sheffield and Bruce T. McIntosh for Plaintiff and Appellant.

Honey Kessler Amado for Defendants and Respondents.

**OPINION**

**HOLLENHORST, J.**—Plaintiff Posey, owner of a condominium at Lake Arrowhead, filed this action against Mr. and Mrs. Leavitt, owners of another condominium in the same development. Mr. Posey contended that the Leavitts built a deck extension on the side of their condominium that encroached the common area and obstructed his view. Mr. Posey also sued his condominium association for breach of fiduciary duty.

Certain issues were presented to the jury on special interrogatories, and the trial court entered a judgment in favor of the Leavitts and against Mr. Posey. However, the jury awarded Mr. Posey $30,000 damages against the association.

### ISSUES

Mr. Posey appeals, contending that the trial court failed to rule on certain equitable issues and misconceived its duty in ruling on the claims for injunctive relief. Specifically, he contends that the trial court erred in submitting all legal and equitable issues to the jury, in failing to consider that the jury's decision was only advisory on the equitable issues, in failing to make its own factual determinations, and in failing to issue a statement of decision. Secondly, he argues that the stipulation of the parties that the deck encroached on the common area should have led to findings of trespass and nuisance as a matter of law. He also contends that the Leavitts cannot rely on the board's ratification of its consent to the deck construction. Mr. Posey also raises issues concerning jury instructions.

### THE COMPLAINT

In order to understand Mr. Posey's contentions, we first review the allegations of the complaint and the manner in which they were presented to

the jury. The first three causes of action are against the Leavitts for wilful trespass, negligent trespass, and nuisance. For relief, plaintiff seeks an order requiring removal of the deck extension and damages.

The fourth cause of action is against the homeowners association for breach of fiduciary duty and breach of the covenant of good faith and fair dealing. In that cause of action, Mr. Posey contended that the association breached its fiduciary duties by approving the deck extension, and in not requiring its removal. He sought damages against the association.

### TRIAL COURT PROCEEDINGS

At the beginning of trial, the Leavitts made a motion for judgment on the pleadings and argued that the court should decide whether a nuisance existed before submitting the damages issues to the jury.[1] They urged that there was no nuisance and no trespass. The trial court did not deny the motion at that time, but stated that it felt that the case presented issues that should go to the jury. Subsequently, the trial court denied the motion on grounds that the pleadings stated sufficient causes of action to proceed.

The Leavitts' counsel also moved at the beginning of the trial to bifurcate the trial so that the issue of nuisance would be first heard by the court. Although the trial court stated that it agreed that it would decide the nuisance issue, it denied the motion.

In his brief, Mr. Posey states that, at the time jury instructions were discussed, the trial court decided that it would not make a preliminary decision on the trespass and nuisance issues, but would submit these issues to the jury. Unfortunately, the court's reasoning is unknown because this discussion was not reported.

The jury was asked to make 15 special findings. These questions included whether the board of the association had consented and/or ratified the deck improvement, whether the defendants had relied on the statements made to them, and whether the association had violated its fiduciary duties. Mr. Posey specifically objects to the asking of three questions: (1) "8) Was the use of Mr. and Mrs. LEAVITTS [*sic*] deck extension an interference, substantial and unreasonable, such as would be offensive to a normal person?" (The jury found it was not by a vote of 10-2); (2) "13) Did defendants, DAVID & AILEEN LEAVITT intentionally and willfully trespass on the 'Common

---

[1] The record is not complete because the trial briefs and written motions were not included in the record. The transcript indicates that the parties and the court generally accepted the principle that the trial court would decide the trespass and nuisance issues, and the jury would determine monetary damages.

Area'?" (The jury found they did not by a vote of 11 to 1); and (3) "14) Did defendants David & Aileen Leavitt negligently trespass on the 'Common Area'?" (The jury found they did not by a vote of 9 to 3.) The jury answered these questions as shown and found for the Leavitts generally.

Following the jury's decision, a hearing was held on December 8, 1987, ostensibly on an equitable indemnity cross-complaint between the Leavitts and the association. At that time, the trial court also ruled on Mr. Posey's request for injunctive relief, even though his counsel was absent. The court said: "I am prepared to rule on that. And my ruling would be that there is no injunctive relief. Based upon the jury's finding and the jury's verdict, there is no justification for any injunctive relief being granted by this court and would deny the plaintiffs' request in that regard."

At a subsequent hearing, Mr. Posey's counsel sought to reargue the request for injunctive relief. The court granted his request, saying "I have to tell you that I'm probably a little bit predisposed in this matter because I had [previously ruled on the matter] and I don't feel that I was inclined to violate the—or set aside the jury's verdict as far as their opinion in order to grant any injunctive relief, but I'm willing to listen to your argument." Mr. Posey's counsel then requested that "the court try to set aside what it's previously done and consider the points and authorities I've cited. [¶] THE COURT: I intend to do that." Mr. Posey's counsel then argued that his understanding was that the court would decide the equitable issues and that the jury would decide the damage claims against the association. Mr. Posey's counsel argued that it was error for the trial court to submit the equitable issues to the jury, but that "I think that the appropriate thing for the court to do at this time is to consider the evidence that was presented in its own mind and make its own independent determination on the equitable issues involved." He also argued that the jury was mistaken in the law if it concluded that the Leavitts' reliance on the association's alleged consent eliminated the trespass. He urged the court to correct the jury's alleged mistake of law.

The Leavitts' counsel responded that the jury was correct if it found that the consent of the association eliminated the trespass.

After further arguments on the merits of the issue, and the cross-complaint for implied indemnity against the association, the trial court said: "It will be under submission. [¶] I would only comment that, if the court really had any equitable power it could use, the best thing it could do would be to put the clock back to the Spring of 1981 and let all these things transpire over again. [¶] If there ever was a classic case of a no-win situation, this is also it."

The trial court then issued its ruling on January 21, 1988. Characterizing the motion as a motion for reconsideration of the December 8, 1987, ruling, it denied reconsideration.[2] Six days later, the Leavitts filed a request for a statement of decision. Twelve days later, Mr. Posey filed a similar request. ■ ■ ■ ■ The trial court denied the requests as being untimely.[3] Accordingly, we have no record of the reasons for the trial court's decision other than the comments quoted above.

## DISCUSSION

Plaintiff was plainly seeking equitable relief against the Leavitts in the form of an injunction to remove the encroachment. ■ Injunction is a remedy for the torts of trespass and nuisance. (See, generally, Code Civ. Proc., §§ 525, 526, 731; Civ. Code, § 3501; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 604, 607, pp. 704, 706; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, §§ 82, 121, 126, pp. 760-761, 802-803, 807-808; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 773-774, pp. 217-219.) The Leavitts defended on grounds that the consent of the association eliminated any trespass or nuisance.

■ "Nuisance is distinguishable from *trespass* in that the mere intentional entry on land may violate the right of exclusive possession and create a right of action for trespass, while conduct or activity cannot amount to a nuisance unless it substantially interferes with the use and enjoyment of the land." (11 Witkin, Summary of Cal. Law, *supra*, Equity, § 125, p. 806.) ■ An action to abate a nuisance is an action in equity. (*Meek* v. *DeLatour* (1905) 2 Cal.App. 261, 263 [83 P. 300], disapproved on other grounds in *Robinson* v. *Puls* (1946) 28 Cal.2d 664, 666 [171 P.2d 430].)

■ An encroachment is usually both a trespass and a nuisance. (11 Witkin, Summary of Cal. Law, *supra*, Equity, § 126, pp. 807-808.) The parties here stipulated that an expert witness would testify that all of the areas outside the buildings themselves, including decks and stairs, en-

---

[2] Defendants correctly note that plaintiff then filed an improper notice of appeal dated March 18, 1988, from the minute order instead of the judgment. Defendants properly moved to augment the record to include the judgment filed July 25, 1988, and suggest that we must treat the appeal as timely filed pursuant to California Rules of Court, rule 2(c). While such treatment is discretionary, not mandatory, we agree with defendants that we should consider the appeal on its merits. We note, however, that the perfection of the appeal, including obtaining the judgment and including it in the record on appeal, is properly the burden of the appellant, not the respondent.

[3] The trial court apparently counted the time from its earlier decision in December, despite its statement that it would set aside its previous decision and consider the matter over again. While there is some question as to the timeliness of the plaintiff's request in February, the Leavitts' request was clearly filed in time. The trial court therefore erred in denying the request for a statement of decision. (Code Civ. Proc., § 632.)

croached on the common area. The issue of encroachment was therefore removed from the case, and did not need to be decided by the court or jury.

■ Since the action was an equitable action, there was no right to a jury trial on the consent defense.[4] (*Wolford* v. *Thomas* (1987) 190 Cal.App.3d 347, 353-354 [235 Cal.Rptr. 422]; *Bank of America* v. *Greenbach* (1950) 98 Cal.App.2d 220, 230 [219 P.2d 814].) ■ "Where a jury trial is not a matter of right, but is nonetheless permitted, the verdict rendered is advisory only. The court may accept or reject it, and, irrespective of the verdict, must make findings to complete the record." (*Estate of Kreher* (1951) 107 Cal.App.2d 831, 837 [238 P.2d 150]; *Estate of Cazaurang* (1946) 75 Cal.App.2d 217, 225 [170 P.2d 694].) If there is no right to a jury trial, a party must file a motion to have any issues tried to the jury, but the jury's decision is advisory. (Cal. Rules of Court, rules 230, 231.) While our record is incomplete on this issue, it is clear that plaintiff properly pointed out to the trial court that any error in submitting issues to the jury would be cured if the trial court adopted the jury's findings as its own. (*Whiting* v. *Squeglia* (1924) 70 Cal.App. 108, 114 [232 P. 986].) Nevertheless, the trial court did not do so.

Here, the jury decided that the Leavitts did not obtain the required written consent of the board of directors at a meeting on June 25, 1981, but that the board subsequently ratified the deck construction and the chairman of the board led the Leavitts to reasonably believe they had board approval. Somewhat inconsistently, the jury then found that a subsequent letter by a member of the board ratified the prior acts of the board and constituted "a confirmation of 'written consent.'"

Assuming that the jury found that consent had been given, and the trial court agreed, the legal question becomes whether the board had the power to consent to a trespass on the common area by a homeowner. The resolution of this question turns on the reconciliation of two different doctrines.

■ Mr. Posey contends that, under principles of real estate law, as applied by the condominium documents here, he was a tenant in common

---

[4] The action could also be construed as an action for the recovery of real property, i.e., an ejectment action. If so, factual issues raised by the consent defense would be properly triable by the jury: "In actions for the recovery of . . . real . . . property, with or without damages, . . . an issue of fact must be tried by a jury, unless a jury trial is waived, or a reference is ordered, as provided in this Code. Where in these cases there are issues both of law and fact, the issue of law must be first disposed of." (Code Civ. Proc., § 592.) In our view, the action was essentially a trespass action, and the third sentence of section 592 applies: "In other cases, issues of fact must be tried by the Court, subject to its power to order any such issue to be tried by a jury . . . ." Since the action against the Leavitts was essentially equitable, the jury's findings were only advisory.

of the common area with the other homeowners, and he therefore had the right to directly enforce the equitable servitudes binding the homeowners. They primarily rely on Civil Code sections 1351 and 1354. Civil Code section 1351, subdivision (f) defines a condominium to consist "of an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit . . . ." Civil Code section 1354 states: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both."[5]

The Leavitts contend that, under real estate and corporate law principles, the homeowner's association owned the common area, and that the board of directors therefore had the power to sell, transfer, or, in this case, authorize an encroachment into the common area. The Leavitts point out that the developers *deeded* the common area (lot 56) directly to the homeowners association, a nonprofit corporation. They argue that the homeowners association was therefore the owner of the common area and it could consent to the encroachment.

The articles of the association empower it to "sell, lease, transfer, dedicate for public use or otherwise dispose of real or personal property in connection with the affairs of the Association." The Leavitts contend that the power to sell must include the lesser power to consent to an encroachment.

The bylaws of the association give the board of directors the power to "exercise for the Association all powers, duties and authority vested in or delegated to this Association and not reserved to the membership by other provisions of these By-Laws, the Articles of Incorporation, or the Declaration."

■ ■ ■ ■ The declaration also contemplates ownership of the common area by the association, with the owners having easements over the common area.[6] It therefore provides: "Every Owner shall have a right and

---

[5] The declaration here was recorded in 1973. At that time, similar language was contained in former Civil Code section 1355. In 1985, the statutes were reorganized by the Davis-Stirling Common Interest Development Act (Stats. 1985, ch. 874) and the quoted language was adopted.

[6] It also inconsistently provides that "Each Owner shall own an undivided interest in the Common Area, including Limited Common Area. No such percentage shall be altered without the consent of all Owners . . . ." Plaintiff, as a member of the association, either owned the common area as a tenant in common with the other homeowners or owned the easement interest discussed in the text. (Civ. Code, § 1351, subd. (*l*); former Civ. Code,

easement of enjoinment [*sic*, enjoyment] in and to the Common Area which will be appurtenant to and shall pass title to every Lot . . . ."[7] The declaration also provides that the percentage of ownership of the common area shall not be changed without the consent of all of the owners.

The parties here focused on a section of the declaration which states: "No Owner shall, without first obtaining written consent of the Board, make or permit to be made any structural alteration or structural improvement in or to his Lot or in or to any other part of the Project. No Owner shall take any action or permit any action to be taken that will impair the structural soundness or integrity or safety or [*sic*, of] any building or other structure in the Project or impair any easement or right or personal property which is a part of the Project, without the written consent of all Owners." The Leavitts argued that, having obtained the written consent required by the first sentence, their project met the requirements of the declaration, even though it was not approved by the other homeowners.

We disagree for two reasons. Under the second sentence, an encroachment into the common area impairs the easements of the other owners over the common area, and thus requires the consent of all of the homeowners.[8]

Secondly, although the Leavitts contended that board approval was sufficient because the board owns the common area, it is not necessary that the plaintiff own the property. All plaintiff needed to do was to show a possessory right superior to the right of the trespassers. (5 Witkin, Cal. Procedure, *supra*, Pleading, §§ 582, 586, pp. 48-49, 51-52.) Plaintiff clearly had such a right here.[9]

Under well-accepted principles of condominium law, a homeowner can sue the association for damages and an injunction to compel the association to enforce the provisions of the declaration. (*Cohen* v. *Kite Hill*

§ 1353, subd. (b).) Either interest is sufficient to support his trespass action. (See, generally, 7 Miller & Starr, Cal. Real Estate (2d ed. 1990) § 20:51, p. 117; 5 Miller & Starr, Cal. Real Estate, *supra*, § 14.10, pp. 323-325.)

[7] Interestingly enough, this section also provides that the easement is subject to the right of the association to convey the common area to a public agency but that such a conveyance requires a 2/3 vote of the owners. The declaration fails to mention the general right to transfer real property which is contained in the articles of incorporation, and which is unrestricted.

[8] The declaration also provides that "each Owner may use the Common Area, excepting Limited Common Area, in accordance with the purposes for which it is intended, so long as he does not hinder or encroach upon the lawful rights of the other Owners." Obviously, as the parties agreed, there was an encroachment here.

[9] An analogous situation would be where a landlord consents to a third person's activities on the property that interfere with a tenant's interests. The tenant can still sue the third person for trespass on the tenant's estate. (*Brown Derby Hollywood Corp.* v. *Hatton* (1964) 61 Cal.2d 855, 858; 5 Miller & Starr, Cal. Real Estate, *supra*, § 14.10, pp. 323-325.)

*Community Assn.* (1983) 142 Cal.App.3d 642 [191 Cal.Rptr. 209].) More importantly here, the homeowner can sue directly to enforce the declaration. "The typical declaration provides that the association or any owner has the right to enforce the declaration by any proceeding at law or in equity. . . . Ordinarily the declaration would be enforced by the association. However, in the event of that body's failure or inability to act because of divergence of opinion among the members, any one of the unit/lot owners may take legal action to enforce the restrictions against what he considers to be a violation by one or more other unit/lot owners." (Hanna, Cal. Condominium Handbook (2d ed. 1986) § 14.58, p. 430.)[10]

"Any owner who believes that the association is not discharging its duty to enforce the restrictions has an individual cause of action against the association and the person who has violated the restrictions . . . ." (7 Miller & Starr, Cal. Real Estate, *supra*, § 20:58, pp. 128-131; 4 Witkin, Summary of Cal. Law (9th ed. 1988) § 495, pp. 672-673.)

We therefore conclude that the trial court should have initially decided at least the trespass cause of action in favor of the plaintiff, and that, since the consent of the board of directors was insufficient authorization for the encroachment, the trial court should not have submitted any issues to the jury. The parties initially viewed the jury as the fact-finder on the damage claims against the association. If it had been limited to this role, the trial would have been substantially shortened and error avoided.

Despite this conclusion, we do not find that Mr. Posey should automatically receive the injunction he seeks. As the Leavitts point out, theirs is a small encroachment and the governing principles were long ago summarized in *Christensen* v. *Tucker* (1952) 114 Cal.App.2d 554 [250 P.2d 660]: "It is our view that the better reasoned cases hold that in encroachment cases the trier of fact possesses some discretion in determining whether to grant or to deny the mandatory injunction. In exercising that discretion, and in weighing the relative hardships, the court should consider various factors. It starts with the premise that defendant is a wrongdoer, and that plaintiff's property has been occupied. Thus, doubtful cases should be decided in favor of the plaintiff. In order to deny the injunction, certain factors must be present: 1. Defendant must be innocent—the encroachment must not be the result of defendant's willful act, and perhaps not the result

---

[10] The declaration here provides that: "Each Owner shall comply strictly with the provisions of this Declaration, and the Rules as the same may be lawfully amended from time to time, and with decisions adopted pursuant to said Declaration and Rules, and failure to comply shall be grounds for an action to recover reasonable sums due for damages or for injunctive relief, or both, maintainable by the Board or Manager in behalf of the Owners, *or in a proper case, by an aggrieved Owner* . . . ." (Italics added.)

of defendant's negligence. In this same connection the court should weigh plaintiff's conduct to ascertain if he is in any way responsible for the situation. 2. If plaintiff will suffer irreparable injury by the encroachment, the injunction should be granted regardless of the injury to defendant, except, perhaps, where the rights of the public will be adversely affected. 3. The hardship to defendant by the granting of the injunction must be greatly disproportionate to the hardship caused plaintiff by the continuance of the encroachment and this fact must clearly appear in the evidence and must be proved by the defendant. But where these factors exist, the injunction should be denied, otherwise, the court would lend itself to what practically amounts to extortion." (*Id.*, at pp. 562-563; see, generally, 4 Witkin, Summary of Cal. Law, *supra*, Real Property, § 426, pp. 608-609; 11 Witkin, Summary of Cal. Law, *supra*, Equity, §§ 153-158, pp. 833-840): "Even the early California cases recognized the defense of balancing conveniences where the nuisance consisted of a slight encroachment of buildings on adjoining property." (11 Witkin, *supra*, at p. 835.)

After citing this rule, defendants apply it to the facts of this case and conclude that the trial court properly denied injunctive relief. Thus, they contend that they acted in good faith and in reliance on the consent given them by the board of directors of the association.[11] Secondly, they argue that Mr. Posey will not sustain any irreparable harm if the deck extension is not removed, particularly since he has no enforceable right to a view. Third, they contend that the hardship and cost to them from a removal of the deck extension outweighs the insignificant obstruction of Mr. Posey's view if the deck extension remains.

The problem with defendants' argument is that, while the trial court *could* have made these determinations in their favor, it did not.[12] The trial court's comments quoted above show that it did not decide the case under its equitable jurisdiction, did not independently evaluate the evidence, did not specifically adopt the jury's findings, and did not weigh the relative hardships to decide whether to grant or deny the injunction. Even the cases defendants cite to support their position also support the proposition that

---

[11] At oral argument, defendants also argued that there was a past practice of the board approving deck extensions, and that this history was relevant in interpreting the contract created by the recorded declaration. However, the defendants failed to point out that the declaration contains a waiver clause which essentially provides that the failure to insist on strict performance of a provision of the declaration is not a waiver of that provision. (Declaration, par. 15, pp. 18-19.)

[12] Defendants also rely on the familiar rule that the exercise of the trial court's discretion will be reversed only upon a showing of abuse of discretion. Again, the problem for defendants is that the record does not show that the trial court did exercise its discretion or did adopt the findings of the jury as its own. (Cf. *Lippold* v. *Hart* (1969) 274 Cal.App.2d 24 [78 Cal.Rptr. 833].)

the case will be reversed and remanded if the trial court has failed to weigh the relative hardships and make proper findings. (*Brown Derby Hollywood Corp.* v. *Hatton, supra,* 61 Cal.2d 855; *D'Andrea* v. *Pringle* (1966) 243 Cal.App.2d 689 [52 Cal.Rptr. 606]; *Christensen* v. *Tucker, supra,* 114 Cal.App.2d 554.)

Anticipating this problem, defendants rest on the presumption in favor of the validity of a judgment and contend that a correct decision should be upheld even if it is based on the wrong reasons.[13] They argue that the judgment is valid on its face, and, since there was no statement of decision, it will be presumed that the trial court found all facts necessary to support the judgment, citing *In re Marriage of Ditto* (1988) 206 Cal.App.3d 643 [253 Cal.Rptr. 770].

We reject this argument for two reasons. First, unlike *Ditto,* we have found that the trial court was properly asked for a statement of decision and failed to give it. Second, the judgment here contains the special findings of the jury quoted above, but no reasons for the denial of equitable relief. Because of the inconsistencies in the findings, we cannot presume that the judgment is regular. Since the trial court's comments quoted above indicate that the trial court did not exercise its discretion, we cannot presume that it did.

Since the trial court failed to exercise its discretion in this regard, the case must be remanded to allow it to do so. However, for its guidance, we briefly discuss some of the other issues raised by the parties, and their effect on the trial court's future deliberations. (See, generally, 5 Miller & Starr, Cal. Real Estate, *supra,* § 14:13, pp. 328-334.)

1. *Alleged Right to a View.*

In applying the *Christensen* test, the trial court will generally grant the injunction if it finds that the plaintiff will suffer irreparable injury from the encroachment. To decide whether the plaintiff here will suffer irreparable injury, the trial court must decide the threshold question of whether plaintiff had a right to his view.

Generally, there is no such right. *Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116 [99 Cal.Rptr. 350], states the general rule: "Although, in the light of the foregoing principles, it would appear that an interference with the view from land may amount to a nuisance, the courts have held that a building or structure cannot be complained of as a nuisance

---

[13] The most recent case relied on by defendants, *Novicke* v. *Vons Grocery Store* (Cal.App.) has been ordered depublished by the Supreme Court.

*merely* because it obstructs the view from neighboring property." (*Id.*, at pp. 126-127.) The jury was correctly, although unnecessarily, instructed here that, under California law, a landowner has no right to an unobstructed view over adjoining property. (See, also, *Wolford* v. *Thomas, supra,* 190 Cal.App.3d 347; *Pacifica Homeowners' Assn.* v. *Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1152 [224 Cal.Rptr. 380]; *Katcher* v. *Home S. & L. Assn.* (1966) 245 Cal.App.2d 425 [53 Cal.Rptr. 923].)

"As a general rule, a landowner has no natural right to air, light or an unobstructed view and the law is reluctant to imply such a right. [Citations.] Such a right may be created by private parties through the granting of an easement [citations] *or through the adoption of conditions, covenants and restrictions . . .* or by the Legislature [citations]." (*Pacifica Homeowners' Assn.* v. *Wesley Palms Retirement Community, supra,* 178 Cal.App.3d 1147, 1152, italics added.)

The declaration here does not contain a specific provision giving homeowners a right to existing views. It is also true that, as defendants pointed out at oral argument, the courts are reluctant to imply such a right. Nevertheless, the practical effect of enforcing the provisions of the declaration would be to give protection to plaintiff's existing view.

For example, plaintiff relied on general language in the declaration to support his contention that a right to a view could be found in the declaration. He pointed out that the declaration refers to an easement of "enjoinment," which is presumably intended to be the right of quiet enjoyment stated in Civil Code section 1463. (See, generally, *Petroleum Collections Inc.* v. *Swords* (1975) 48 Cal.App.3d 841 [122 Cal.Rptr. 114].) Such a right is a running covenant, enforceable as an equitable servitude. (Civ. Code, § 1462; Cal. Condominium and Planned Development Practice (Cont.Ed.Bar 1984) §§ 1.9, pp. 15-16, 8.42-8.44, pp. 666-668.) The declaration also requires owners to adhere to the rules of the association. These rules require the common area to remain unobstructed, and the effect of strictly enforcing the right of quiet enjoyment or these rules would be to remove the alleged obstruction to plaintiff's view.

On the other hand, as defendants point out, the declaration allows any owner to use the common area "in accordance with the purposes for which it is intended, so long as he does not hinder or encroach upon the lawful rights of the other Owners." (Declaration, par. 6, pp. 7-8.) Defendants argue that, since a view is not generally a "lawful right," plaintiff's only right is the right to be free from an unreasonable interference with the use and enjoyment of his property. Although the jury found no such unreason-

able interference here, the trial court could find that the encroachment itself was an unreasonable interference with the intended uses of the common area.

Accordingly, in determining whether plaintiff has suffered irreparable injury, the trial court should *not* consider deprivation of a view, per se, as an injury. It should, however, consider the total effect of the encroachment and specifically whether it constitutes an unreasonable interference with plaintiff's rights under the declaration and rules. In interpreting the documents, the trial court should apply a rule of liberal interpretation to facilitate the operation of the development. (Civ. Code, § 1370; 7 Miller & Starr, Cal. Real Estate, *supra*, § 20:57, pp. 126-128.)

If the trial court finds that the defendants are innocent and that plaintiff will not suffer irreparable injury, the court should then proceed with evaluating the relative hardships under the third prong of the *Christensen* test. (*Christensen* v. *Tucker*, *supra*, 114 Cal.App.2d 554.) The considerations discussed in this section would also apply in balancing the relative hardships.

## 2. Interference With Use.

In considering irreparable injury and relative hardships, the trial court should not consider the Leavitts' use of the deck extension.

Defendants contend that there is no nuisance because the jury found that the use of the deck extension by the Leavitts was not "an interference, substantial and unreasonable, such as would be offensive to a normal person." Thus, they cite cases such as *Venuto* v. *Owens-Corning Fiberglas Corp.*, *supra*, 22 Cal.App.3d 116, 126-127, which discuss the noninvasive activities that may constitute a nuisance. *Venuto* states: "Under the law of nuisances, where personal discomfort is the basis of the complaint the test of liability is the effect of the alleged interference on the comfort of normal persons of ordinary sensibilities in the community." (*Id.*, at p. 126.) However, these cases are not applicable here because this is not a case of noninvasive activities that constitute a nuisance. The encroachment is an obstruction to the free use of the common area, and is itself the nuisance. (Civ. Code, § 3479; 11 Witkin, Summary of Cal. law, *supra*, Equity, § 156, pp. 835-837.) The trial court therefore need not consider whether the Leavitts' use of the deck extension interfered with the Mr. Posey's use of his deck in applying the balancing test.

## 3. Effect of Prior Award of Money Damages.

The trial court can consider injunctive relief despite the fact that the jury awarded Mr. Posey money damages against the association.

Defendants contend that the trial court cannot award injunctive relief because Mr. Posey was awarded money damages against the association. They argue that the damages were for the diminishment in value of the Posey property, and that, having been awarded such damages, Mr. Posey cannot obtain injunctive relief.

We disagree. The cause of action against the association was for breach of fiduciary duty. (Cf. *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 513-514 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447].) Although Mr. Posey claimed a diminishment in value of approximately $50,000, it is not clear that damages were awarded for that diminishment. The jury may well have awarded the $30,000 to Mr. Posey, payable by the association, to compensate him for the costs of bringing an action that the association should have brought. Damages were the legal remedy for the breach of fiduciary duty, while injunctive relief was the equitable remedy sought for the trespass and nuisance. (Rest.2d, Torts, § 822, com. d.) Defendants' argument also fails because Code of Civil Procedure section 731 allows a plaintiff to both enjoin or abate a nuisance and also recover damages. The trial court remains free, on remand, to issue the requested injunction, to award damages in lieu of an injunction, or to find for defendants.

## DISPOSITION

The judgment is reversed and the case is remanded with instructions to the trial court to exercise its discretion to decide whether or not to issue an injunction by applying the tests stated in *Christensen* v. *Tucker, supra,* 114 Cal.App.2d 554. In making this determination, the trial court should consider whether or not the encroachment by the Leavitts was innocently made, whether Mr. Posey will suffer irreparable injury if the injunction is not issued, and the relative hardships to the parties caused by granting or denying the injunction. The trial court should also make and enter a statement of decision in accordance with Code of Civil Procedure section 632. Plaintiff is to recover costs on appeal.

Dabney, Acting P. J., and McKinster, J., concurred.