[No. B114527. Second Dist., Div. Two. Aug. 25, 1998.]

COUNTRYWIDE HOME LOANS, INC., Plaintiff and Appellant, v. ALFRED TUTUNGI et al., Defendants and Respondents.

## Counsel

Garfield, Tepper, Epstein & Turner, David B. Epstein and Felicia R. Meyers for Plaintiff and Appellant.

Alan M. Insul, McKenna & Cuneo and Jean-Paul Menard for Defendants and Respondents.

## Opinion

**FUKUTO, J.**—This appeal concerns the conflicting claims of plaintiff Countrywide Home Loans, Inc., and defendants Alfred Tutungi, Mounir Doche, and Maryse T. Doche (borrowers) to earthquake insurance proceeds held by defendant Foothill Village Homeowners Association (association). In a suit for declaratory relief by plaintiff, successor owner of borrowers' condominium by foreclosure, the trial court granted borrowers summary judgment and ruled that they rather than plaintiff were entitled to the proceeds. We hold that plaintiff, successor to borrowers' ownership and association membership, has established its entitlement to the funds, and accordingly we reverse.

### Facts

The case was decided on cross-motions for summary judgment by plaintiff and borrowers, and both sides agree that the material facts are undisputed.[1] In 1992, borrowers acquired unit 21 of the Foothill Village Townhomes, a 22-unit condominium project in Sylmar (project). The purchase was partly financed by a corporate predecessor of plaintiff, which took a note and trust deed for $118,450. In addition to the unit, borrowers' property included an undivided one twenty-second interest in the common area of the project, constituting the portion exclusive of the units. Under the project's covenants, conditions, and restrictions (CC&R's), and the bylaws of the association, a

---

[1]The association did not take a position between the contestants below, and it has not appeared here.

nonprofit mutual benefit corporation (Corp. Code, § 7110.et seq.), each unit owner was a member of the association. Membership was attached to,. and began and ended with, ownership.

With regard to insurance, the deed of trust required borrowers to insure the real property as their lender required, the policies to provide for payment of loss to the lender. However, a "condominium rider" provided that if the association maintained such insurance, borrowers' duty to insure was waived. The CC&R's required the association to carry a replacement cost insurance policy for the project. As of 1994, the association had obtained and maintained such a policy from State Farm Fire and Casualty (State Farm), which included earthquake coverage of over $2 million (the policy). The policy's named insured, and sole insured with respect to property loss coverage, was "Foothill Village Townhomes."[2]

The project was severely damaged by the January 17, 1994, Northridge earthquake. Borrowers vacated their unit and eventually defaulted on their loan. Plaintiff foreclosed nonjudicially, and acquired the unit in July 1995, for a bid of $113,795.52. ▆▆▆▆ That amount was understood below, and will here be deemed to have been, a full credit bid.[3] Plaintiff thereby succeeded to borrowers' position as a member of the association.

The association received from State Farm approximately $1.9 million in earthquake insurance proceeds, amounting pro rata to approximately $86,000 per unit. Had these proceeds been sufficient to meet the costs of repairing the project, the association would have been required, under the CC&R's, to effect the repair. However, the proceeds were not sufficient, and it therefore fell to the association's membership, under the CC&R's, to decide whether to proceed with repairs by special assessment or not to do so, and instead distribute the insurance proceeds to the owners, proportionally, subject to the rights of any mortgagees. The owner-members determined to distribute the proceeds among themselves.

This suit for declaratory relief followed, plaintiff contending it was entitled to the portion of insurance proceeds allocated to unit 21 of the project

---

[2]According to the CC&R's, the policy was to have named as insureds the owners, their mortgagees, the association's officials, and the association "as trustee for all of the Owners and for their Mortgagees as their interests may appear."

[3]A full credit bid is one in an amount equal to the outstanding balance of the debt and the expenses of foreclosure. (E.g., *Alliance Mortgage Co.* v. *Rothwell* (1995) 10 Cal.4th 1226, 1238 [44 Cal.Rptr.2d 352, 900 P.2d 601] (*Alliance*).) In a motion for reconsideration of the summary judgment ruling, plaintiff advanced evidence to the alleged effect that its bid had actually been $12,000 less than that sum. The trial court denied the motion, and plaintiff has not assigned the ruling as error.

by reason of its membership in the association and ownership of that unit. Borrowers moved for summary judgment of their own entitlement to the proceeds, contending that plaintiff's claim or right to the proceeds had been extinguished by its full credit bid. The parties stipulated that plaintiff's opposition to borrowers' motion be treated as a cross-motion for summary judgment. Borrowers raised further grounds in their reply papers. The trial court ruled in borrowers' favor.

## DISCUSSION

Plaintiff's position is straightforward. As successor owner of borrowers' unit, plaintiff also succeeded to their membership in the association, by reason of both the CC&R's and bylaws, and the provisions of Civil Code section 1358, subdivision (b), which provides, inter alia, that the transfer of a condominium unit includes the owner's membership in the owners' association.[4] Therefore, as owner and association member, presently and when the decision to divide the proceeds was made, plaintiff rather than borrowers is the party entitled to the association's distribution to its members—just as plaintiff would have been the beneficiary of the proceeds had they been devoted to repair the project. This position is intrinsically compelling, and we turn to borrowers' arguments in opposition to it.

Borrowers now reiterate only briefly their contention that plaintiff's full credit bid bars plaintiff from obtaining the insurance proceeds, and we find it unavailing. Under the full credit bid rule, a foreclosing lender that has purchased the real property security for such a bid is precluded from pursuing further claims to recoup its debt, because the bid has established that the foreclosed security is equal in value to the debt, which therefore has been satisfied. (E.g., *Alliance, supra,* 10 Cal.4th at p. 1238.) Under this rationale, such a lender is not entitled to the proceeds of insurance for damage to the property, because the lender's only erstwhile interest in the insurance was as security for the debt, now discharged. (*Reynolds* v. *London etc. Ins. Co.* (1900) 128 Cal. 16, 19-20 [60 P. 467]; *Rosenbaum* v. *Funcannon* (9th Cir. 1962) 308 F.2d 680, 684-685.)

The preclusion of a full credit bid does not apply to the present situation. Plaintiff's claim of entitlement to the association's insurance proceeds is not made by virtue of plaintiff's former status as a secured creditor, seeking relief under the policy in that capacity. Rather, plaintiff claims the proceeds as a full-fledged unit owner and member of the association. It is only in that capacity that plaintiff comes within the class—

---

[4]Civil Code section 1358, subdivision (b) provides in part: "In a condominium project . . . [a]ny conveyance, judicial sale, or other voluntary or involuntary transfer of the owner's entire estate also includes the owner's membership interest in the association."

owners—to whom the proceeds have been allocated by the association. In short, plaintiff claims a share of the proceeds not as an original creditor beneficiary of the policy but as an owner and a member of the association to which the policy's proceeds have been paid.[5]

Borrowers advance a series of arguments intended to establish their own status vis-à-vis the insurance proceeds, in part by denigrating that of the association. These too are unavailing. Borrowers first insist that the association, not being an owner, had no insurable interest in the project. This should come as a surprise to both the association and State Farm, which respectively paid thousands of dollars in premiums and nearly $2 million in loss benefits on the policy. However, State Farm having paid those benefits to the association, borrowers are not entitled to contest the insurability of the association's interest. (*Jenkins* v. *Hill* (1939) 35 Cal.App.2d 521, 524 [96 P.2d 168]; accord, *In re Marriage of Bratton* (1994) 28 Cal.App.4th 791, 793 [34 Cal.Rptr.2d 86].) We therefore need not explore the rationale of the association's insurable interest.

The thrust of borrowers' argument, however, is that either they and the other owners at the time of the earthquake were the actual insureds, or that the association in any event obtained and holds the proceeds as trustee for them, and not plaintiff. The short answer to the first contention is that borrowers were not insureds, by the terms of the policy as well as governing nonprofit corporation law. (*Gantman* v. *United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560, 1566-1568 [284 Cal.Rptr. 188].) On the other hand, the association did hold the policy for the benefit of the owners, to enable them to obtain repair or recompense, through the association.[6] Nevertheless, borrowers' position in this respect, as owner and member, was transferable, and it passed to plaintiff when borrowers relinquished the unit.

Borrowers further argue that the CC&R's may not be used to transfer the insurance proceeds from themselves to plaintiff, essentially because such CC&R's constitute equitable servitudes enforceable only between owners of various units, not between a former owner and a present one. This argument is based on two fallacious premises, the first being that the funds in question are borrowers', as opposed to those of the association, as trustee for its members. Second, plaintiff is not seeking to enforce the CC&R's against borrowers. Plaintiff claims entitlement, under the CC&R's, to receive its

---

[5]This distinction also disposes of borrowers' contention that allowing the proceeds to plaintiff would violate the antideficiency laws.

[6]The CC&R's specifically provide that policy proceeds should be payable to the association as trustee.

share of the proceeds from the association. (See *Posey* v. *Leavitt* (1991) 229 Cal.App.3d 1236, 1246-1247 [280 Cal.Rptr. 568].)[7]

Nor does *Ziello* v. *Superior Court* (1995) 36 Cal.App.4th 321 [42 Cal.Rptr.2d 251] preclude plaintiff's claim. *Ziello* held that a lender was not entitled to earthquake insurance proceeds where the trust deed's provisions for insurance did not require the borrower to procure that type of coverage. Here, once again, plaintiff's position derives not from its former deed of trust and security interest but from its status as owner of the property and member of the association.

We therefore agree with plaintiff that, having succeeded to borrowers' position as unit owner and member of the association, it is entitled to share in the insurance proceeds with the other owner-members, just as it would have shared in their use to repair the project had the members elected that option. Plaintiff having moved for summary judgment concurrently with borrowers, and there being no disputed issues of material fact, we shall direct that judgment be entered in favor of plaintiff.

### DISPOSITION

The judgment is reversed, with directions to enter judgment for plaintiff. Plaintiff shall recover its costs.

Boren, P. J., and Nott, J., concurred.

---

[7]Indeed, if anyone is disabled from claiming the funds via the CC&R's, it is borrowers, who no longer own the encumbered and benefited property.