118 Cal.Rptr.2d 367 (2002)
97 Cal.App.4th 571
NORWEST MORTGAGE, INC., Plaintiff and Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Respondent.
No. D036691.
Court of Appeal, Fourth District, Division One.
March 18, 2002.
Review Denied July 24, 2002.[*]
*369 Gruber & Donnet, Allen M. Gruber and Amy C. Salmans, San Diego, for Plaintiff and Appellant.
Hughes & Nunn, Randall M. Nunn and E. Kenneth Purviance, San Diego, for Defendant and Respondent.
*368 McCONNELL, J.
Norwest Mortgage, Inc. (Norwest) appeals from a judgment granting State Farm Fire and Casualty Company's (State Farm) motion for summary judgment and dismissal of its complaint for insurance bad faith. State Farm had denied a claim by Norwest for the proceeds of a fire insurance policy on a residence that Norwest acquired through a nonjudicial foreclosure sale. The trial court concluded that Norwest was insured only to the extent it had a security interest in the residence and the security interest was extinguished when it tendered a full credit bid at the foreclosure sale.
Norwest appeals, contending it made a mistake in tendering full credit bids and the trustee's sales at which the bids were made were later properly rescinded.

FACTUAL AND PROCEDURAL BACKGROUND
In December 1993, Jesus and Norma Marroquin, the owners of real property located at 16746 MacKennas Gold Avenue in Palmdale, obtained a loan secured by a first deed of trust on the property. Norwest's predecessor was the beneficiary on the deed of trust. The Marroquins, who used the property as a rental unit, obtained a rental dwelling policy from State Farm, policy number 90-LP-5761-6. The policy included the following provision:
"12. Mortgage Clause. The word `mortgagee' includes trustee, "a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear .. .."
The declarations page of the policy identifies Norwest as the mortgagee.
By the fall of 1997, the Marroquins were in default of their loan, and in late September, they filed a Chapter 7 bankruptcy petition. On December 3, Norwest was granted relief from the automatic stay in the Marroquins' bankruptcy case, allowing Norwest to commence foreclosure proceedings on the property.
On December 6, a fire severely damaged the property. Jesus Marroquin reported *370 the loss to State Farm, but said since the property was in foreclosure he was not interested in pursuing the claim. Norwest also learned of the fire and initiated the insurance claim procedure.
In anticipation of the trustee's sale scheduled for April 29, 1998, Norwest retained ATI Foreclosure Services, Inc. (ATI) to handle its bidding process on the property and also to act as trustee at the sale. ATI had access to Norwest's computer system that included Norwest's individual foreclosure files. The Marroquin property file had a comment stating the property had sustained substantial fire damage. On April 28, one day before the scheduled trustee's foreclosure sale, Norwest, as was its practice, posted the unpaid principal, interest, fees and costs of $80,350.89 and instructed ATI to add its fees and costs to these figures. ATI's fees and costs were $1,355.34. ATI did not notice the comment about the fire damage and did not contact Norwest for further instructions.
On April 29, the first of three trustee's foreclosure sales was held. Norwest, which was the only bidder, made a full credit bid of $81,706.23 and obtained the property. The Trustee's Deed Upon Sale was never recorded.
On July 8, State Farm notified Norwest it was denying its claim since Norwest had made a "full value foreclosure" on the property, thereby extinguishing its insurance claim.
On July 9, Norwest faxed ATI authorization to rescind the April 29 trustee's sale and republish the foreclosure. In its letter, Norwest also instructed ATI to publish a lower bid. The letter read in pertinent part:
"The above referenced property sustained extensive fire damages December 6, 1997, prior to the original sale date of April 29, 1998. At sale Norwest Mortgage bid full debt that negated any claim to the insurance proceeds that may have been forthcoming as the attached insurance denial letter states. [¶] An appraisal obtained July 2, 1998, valued the property at $11,500.00. The purpose of this correspondence is to request that this figure be published in order to restore [Norwest's] ability to receive insurance proceeds."
On July 24, Norwest informed State Farm it had "rescinded" the foreclosure sale and a new trustee's foreclosure sale was scheduled.
On November 9, a second trustee's foreclosure sale was held; again, Norwest was the only bidder. Norwest had replaced ATI with Lonestar Mortgage Services, LLC, (Lonestar) as the new foreclosing trustee. Contrary to Norwest's instructions to bid $11,500, Lonestar made a full credit bid on Norwest's behalf at the November 9 foreclosure sale. Norwest claimed it rescinded the second trustee's sale when it learned that a full credit bid had been made and instructed Lonestar not to record the trustee's deed and to republish for another foreclosure sale.[1]
On January 5, 1999, a third trustee's foreclosure sale was held. Norwest bid $11,500. A Trustee's Deed Upon Sale was issued; it was recorded on March 25, 1999.
Subsequently, Norwest submitted the Trustee's Deed Upon Sale for $11,500 to State Farm in pursuit of the insurance claim. State Farm again rejected the claim.
In June 1999, Norwest filed the underlying complaint against State Farm for *371 breach of contract, bad faith and declaratory relief.

DISCUSSION
Norwest contends its full credit bid did not relieve State Farm of its obligation to pay the claim because it rescinded the trustee sales. The contention is without merit.
A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.) A defendant satisfies this burden by showing "`one or more elements of the `cause of action' ... `cannot be established,' or that `there is a complete defense'" to that cause of action. (Ibid,)
We review the trial court's granting of a summary judgment motion under an independent review standard. (Buss v. Superior Court (1997) 16 Cal.4th 35, 60, 65 Cal.Rptr.2d 366, 939 P.2d 766.) Since the facts are generally undisputed, only legal issues are presented.
When a debtor defaults on a secured real property loan, the lender-beneficiary may institute nonjudicial foreclosure proceedings triggering a trustee's sale of the property to satisfy the obligation. (Civ.Code, § 2924 et seq.)[2] Like any other purchaser, the lender-beneficiary may bid cash for the property, offering more or less than the amount of indebtedness. However, because it would be pointless to require the lender-beneficiary to tender cash to itself, the lender-beneficiary also may credit bid all or any portion of the outstanding debt. (Central Sav. Bank of Oakland v. Lake (1927) 201 Cal. 438, 447-448, 257 P. 521.) Once a lender-beneficiary makes a credit bid, there is no distinction between it and other purchasers' cash bids. (§ 2924h, subd. (b).)
A full credit bid is a bid "in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure." (Cornelison v. Kornbluth (1975) 15 Cal.3d 590, 606, fn. 10, 125 Cal.Rptr. 557, 542 P.2d 981.)
In Cornelison v. Kornbluth, supra, 15 Cal.3d at page 606, 125 Cal.Rptr. 557, 542 P.2d 981, the Supreme Court held the beneficiary's full credit bid had to be considered "a total satisfaction of the secured obligation," and therefore the beneficiary relinquished its right to recover damages for bad faith waste from the trustor. A mortgagee's full credit bid is deemed to be an irrevocable warranty that the value of the security foreclosed upon was equal to the outstanding debt and not impaired. (Id. at pp. 606-607, 125 Cal. Rptr. 557, 542 P.2d 981.) Thus, a full credit bid by the mortgagee at a trustee's sale operates to extinguish the debt and the mortgagee is not entitled to any fund of money resulting from injury to the property. (Ibid.) Put another way: "A full credit bid conclusively establishes the value of the property, extinguishes the lien, and precludes the lender from pursuing any other remedy based on the diminution of the value of the property." (Bank of America v. Quackenbush (1997) 56 Cal. App.4th 1167, 1171, 66 Cal.Rptr.2d 81.)
The full credit bid rule not only bars the lender from postsale remedies against the borrower, but also from postsale remedies against third parties, absent fraud. (Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226, 1238-1239, 1246, 44 Cal.Rptr.2d 352, 900 P.2d 601; Bank of *372 America v. Quackenbush, supra, 56 Cal. App.4th at p. 1171, 66 Cal.Rptr.2d 81.)
"Under the `full credit bid rule,' when a lender makes such a bid, it is precluded for purposes of collecting its debt from later claiming that the property was actually worth less than the bid. [Citations.] Thus, the lender is not entitled to insurance proceeds payable for pre-purchase damage to the property, prepurchase net rent proceeds, or damages for waste, because the lender's only interest in the property, the repayment of its debt, has been satisfied, and any further payment would result in a double recovery. [Citation.]" (Alliance Mortgage Co. v. Rothwell, supra, 10 Cal.4th 1226, 1238-1239, 44 Cal.Rptr.2d 352, 900 P.2d 601.)
In Alliance Mortgage Co. v. Rothwell, supra, 10 Cal.4th at pages 1232, 44 Cal. Rptr.2d 352, 900 P.2d 601 to 1233, the lender sued a real estate appraiser and broker, a title insurer and others, alleging defendants had fraudulently induced plaintiff to issue loans on nine residential properties. The Supreme Court carved out an exception to the full credit bid rule, holding fraud claims against third parties who fraudulently induced the lender to make the loans were not barred by the full credit bid rule. (Id. at pp. 1246-1247, 44 Cal. Rptr.2d 352, 900 P.2d 601.) "[T]o the extent Alliance's full credit bids were proximately caused by defendants' fraudulent misrepresentations ..., Alliance's bids cannot be deemed an admission of the properties' value.... Hence the full credit bid rule would not apply." (Id. at p. 1247, 44 Cal.Rptr.2d 352, 900 P.2d 601.) However, the Supreme Court went on to note that in the absence of fraud affecting the bid, a full credit bid precludes recovery by the lender:
"[T]o the extent Alliance's full credit bids were not proximately caused by defendant's fraudulent misrepresentations ..., the full credit bid rule applies, and Alliance's bid would then constitute an irrevocable offer to purchase the property for that amount. [Citation.] Hence, under these circumstances, Alliance would not be entitled to recover the difference between its bid ... and the actual value of the property. [Citation.]" (Ibid.)
The full credit bid rule applies in the insurance context. Because the effect of a full credit bid is to satisfy the debt, any lien on the insurance proceeds is extinguished. (4 Miller & Starr, Cal. Real Estate (3d ed.2000) § 10:61, p. 189; see also Countrywide Home Loans, Inc. v. Tutungi (1998) 66 Cal.App.4th 727, 731, 78 Cal. Rptr.2d 203 ["lender is not entitled to the proceeds of insurance for damage to the property, because the lender's only erstwhile interest in the insurance was as security for the debt, now discharged"]; Altus Bank v. State Farm Fire and Cas. Co. (C.D.Cal.1991) 758 F.Supp. 567, 571 ["A mortgagee's insurable interest under an insurance policy is limited to the amount of the debt. Once the debt has been fully extinguished by the full credit bid, so has the insurable interest."].)[3]
A typical case in the insurance area is Universal Mortg. Co., Inc. v. Prudential Ins. Co. (9th Cir.1986) 799 F.2d 458. The lender was named beneficiary under a "`lender's loss payable endorsement'" in a *373 fire insurance policy covering the property securing the loan. (Id. at p. 459.) The borrower defaulted and the notice of trustee's sale issued. (Ibid.) The lender's inspector, who was unable to enter the property, described the property condition as good based on external observations. (Ibid.) The lender made a full credit bid unaware of the damage inside. (Ibid.) On resale, the lender recovered about $15,000 less than its bid. (Ibid.) The lender sought an exception to the full credit bid rule because it had "no actual or constructive knowledge of a loss at the time of a full credit bid." (Id at p. 460.) The Court of Appeal rejected the argument, stating: "Actual or constructive knowledge of property damage prior to a full credit bid is irrelevant because the full credit bid, once made, extinguishes the debt secured by the insurance policy." (Id at 461.)
Here, it is undisputed that Norwest made a full credit bid,[4] which satisfied the debt secured by the property and extinguished any lien on the insurance proceeds. However, Norwest seeks to avoid the effect of the full credit bid rule because its full credit bids were mistakes. Norwest argues the trustee's sales at which the full credit bids were made were rescinded, thereby precluding application of the full credit bid rule.
We find Norwest's argument unpersuasive.[5]
First, Norwest has not provided us with, nor has our research disclosed, any published opinion in which a mortgagee can escape the consequences of the full credit bid rule by rescinding the trustee's sale on the basis of mistake, thereby voiding its full credit bid.
Second, allowing rescission under such circumstances as appear in this case is contrary to the statutory framework under which nonjudicial foreclosure sales are conducted in this state and the decisional law interpreting this framework. The statutory scheme for regulation of nonjudicial foreclosures is found at sections 2924 through 2924k. These statutes set forth a comprehensive set of rules to govern trustee's sales, including detailed requirements for notice and the right to cure, as well as how the sale is to be conducted, including provisions for postponement. If the trustee's deedby which the purchaser at a foreclosure sale takes titlerecites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly. (§ 2924.)
Section 2924h sets forth provisions that afford finality to nonjudicial foreclosure sales. A bid at a trustee's sale is deemed to be an irrevocable offer by that bidder to purchase the property for that amount. (§ 2924h, subd. (a).) The trustee's sale shall be deemed final upon the acceptance of the last and highest bid. (§ 2924h, subd. (c); see also In re Garner (Bankr.N.D.Cal.1997) 208 B.R. 698, 700-701 *374 [recording of deed perfects purchaser's title against subsequent bona fide purchaser but does not affect finality].) A properly conducted trustee's sale constitutes a final adjudication of the rights of the borrower and lender. (Smith v. Allen (1968) 68 Cal.2d 93, 96, 65 Cal.Rptr. 153, 436 P.2d 65.) Furthermore, section 2924h, subdivision (f) provides: "In the event that this section conflicts with any other statute, then this section shall prevail." As the Supreme Court observed in Smith v. Allen, supra, 68 Cal.2d at page 96, 65 Cal. Rptr. 153, 436 P.2d 65: "[R]ights of the parties are determined by the statutory provisions respecting foreclosures."
Although the nonjudicial foreclosure statutes call for automatic recision when there is a failure of consideration (§ 2924h, subd. (c)), they do not otherwise provide for rescission.[6] Our review of the law of nonjudicial foreclosure leads us to conclude that rescission as advocated by Norwest is not contemplated by the statutory scheme and related case law. "The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. [Citation.]" (Moeller v. Lien (1994) 25 Cal. App.4th 822, 834, 30 Cal.Rptr.2d 777.) "It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures" (ibid.) to allow Norwest, based on a mistake it made in overbidding, to rescind an otherwise properly conducted trustee's sale.
Third, although a contract may be subject to rescission based on mistake (§ 1689, subd. (b)(1)), we find under the circumstances of this case, Norwest is not entitled to recission. Preliminarily, we note this is not a case of consensual rescission in which the parties agree on this remedy. The parties are the Marroquins and Norwest. The Marroquins walked away from the property and there is no evidence they consented to a rescission. Thus, we are presented with a case of unilateral mistake by Norwest. However, a unilateral mistake renders a contract voidable only under certain circumstances, and those circumstances are not present here. (Conservatorship of O'Connor (1996) 48 Cal.App.4th 1076, 1097, 56 Cal. Rptr.2d 386.)
A party's unilateral mistake "is ground for relief where the mistake is due to the fault of the other party, or the other party knows or has reason to know of the mistake. [Citation.]" (Architects & Contractors Estimating Service, Inc. v. Smith (1985) 164 Cal.App.3d 1001, 1007-1008, 211 Cal.Rptr. 45.) The Marroquins did not cause the mistake and had no knowledge or reason to know about the bidding error.
Further, to rely on a unilateral mistake of fact, Norwest would have to show its mistake was not caused by its neglect of a legal duty. (Architects & Contractors Estimating Service, Inc. v. Smith, supra, 164 Cal.App.3d at p. 1008, 211 Cal.Rptr. 45.) This is so because a mistake of fact is defined as "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or [¶] 2. Belief in the present existence of a thing material to the contract, which does not exist ...." (§ 1577.) Norwest cannot make the requisite showing. Norwest bore the burden and risk of making an informed bid. (Alliance Mortgage Co. v. Rothwell, supra, 10 Cal.4th at p. 1246, 44 Cal.Rptr.2d 352, 900 *375 P.2d 601; Sumitomo Bank v. Taurus Developers, Inc. (1986) 185 Cal.App.3d 211, 225, 229 Cal.Rptr. 719.) Norwest knew of the fire damage. It makes no difference whether blame for the failure in communication between Norwest and the foreclosure services is placed squarely on the shoulders of Norwest, or on ATI and Lonestar. Both ATI and Lonestar acted as Norwest's agents and Norwest was bound by their actions. The question boils down to whether Norwest in light of all the undisputed facts should be permitted to avoid the consequences of its mistake where "`the means of knowledge were easily accessible'" and the mistake was made because Norwest did not "`exercise[ ] at least the degree of diligence "which may be fairly expected from a reasonable person...."'" (Roller v. California Pacific Title Ins. Co. (1949) 92 Cal. App.2d 149, 153, 206 P.2d 694, quoting Grumes v. Sanders (1876) 93 U.S. 55, 61, 23 L.Ed. 798.)
Our conclusion that Norwest is not entitled to relief is also supported by the rule that rescission of a contract on the basis of a unilateral mistake is unavailable to a party who assumed the risk of the mistake in entering into the contract. (Conservatorship of O'Connor, supra, 48 Cal.App.4th at p. 1098, 56 Cal.Rptr.2d 386; Rest.2d Contracts, § 153.) The risk of mistake may be allocated to a party by a court "on the ground that it is reasonable in the circumstances to do so." (Rest.2d Contracts, § 154, subd. c.) Here the risk of making an informed bid falls on Norwest. (Alliance Mortgage Co. v. Rothivell, supra, 10 Cal.4th at p. 1246, 44 Cal. Rptr.2d 352, 900 P.2d 601.) A lender "is not required to open the bidding with a full credit bid, but may bid whatever amount [it] thinks the property worth. [Citation.]" (Commonwealth Mortgage Assurance Co. v. Superior Court (1989) 211 Cal.App.3d 508, 520, 259 Cal.Rptr. 425.) Like any other purchaser, a lender has no obligation to bid any particular amount; it should assess the property's value at the time of the trustee's sale and bid accordingly. (Cornelison v. Kornbluth, supra, 15 Cal.3d at pp. 607, 608, 125 Cal.Rptr. 557, 542 P.2d 981; Sumitomo Bank v. Taurus Developers, Inc., supra, 185 Cal.App.3d at p. 225, 229 Cal.Rptr. 719.) It is not unfair to assign to Norwest the risk of its "`bidding errors.'" (Bank of America v. Quackenbush, supra, 56 Cal.App.4th at p. 1174, 66 Cal.Rptr.2d 81.) Norwest controlled the timing of the trustee's sales and knew about the fire damage before it made the full credit bid. It clearly bore the risk of "its own failure to take reasonable and nonburdensome pre-foreclosure precautions." (Rest.3d Property, Mortgages § 4.8, com. a, p. 303.)
There are sound policy reasons for strictly enforcing the finality rules of nonjudicial foreclosure sales and the full credit bid rule.
"[A] contrary approach may well encourage inequitable mortgagee conduct. To permit the mortgagee, after using a full credit bid to discourage third-party bidders, to take the real estate and thereafter establish that it was worth less than the mortgage obligation encourages fraud. It also creates uncertainty as to the mortgagor's rights. Most importantly, it deprives the foreclosure process of the competitive impact of third-party bidding." (Rest.3d Property, Mortgages § 4.8, com. a, p. 303.)

DISPOSITION
The judgment is affirmed. State Farm to recover costs on appeal.
WE CONCUR: HUFFMAN, Acting P.J., and McINTYRE, J.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977.)
[1] Approximately one year later in December 1999, Norwest learned that Lonestar had recorded the trustee's deed from the November 9 foreclosure, contrary to its instructions.
[2] All statutory references are to Civil Code unless otherwise specified.
[3] When the beneficiary bids less than the balance due on the secured debt, the beneficiary does not lose its interest in the insurance proceeds, which are additional security for the debt. The beneficiary is entitled to receive the insurance proceeds in an amount that does not exceed the unpaid balance of the secured debt when the insured event occurs prior to the foreclosure sale. (4 Miller & Starr, supra, Cal. Real Estate, op. cit., § 10:61, p. 191.)
[4] Actually, Norwest twice made full credit bids-the first on April 29, 1998, and the second on November 9, 1998.
[5] Norwest also argues that State Farm lacked standing to question the rescission because State Farm was not a party to the contract or a third party beneficiary of the contract. We disagree. The justification for State Farm's denial of the insurance claim was the full credit bid rule. Norwest's purported rescission was an attempt to eviscerate State Farm's justification. In arguing rescission could not have occurred as a matter of law, State Farm was defending its final rejection of the insurance claim and this lawsuit. Principles of due process dictate that State Farm's right to defend itself in this lawsuit cannot be questioned.
[6] Section 1058.5, subdivision (b), recognizes a trustee's deed can be rescinded because of a pending bankruptcy.